JAMES WASHINGTON, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. On the trial of a defendant on an indictment found under chapter 3463, Laws 1883, for breaking and entering a building, to wit: A meat house, with intent to steal and carry away property of less than the value of twenty dollars, in order to convict there must be some evidence to connect the defendant with the breaking and entering.

2. A court is not bound, upon request of counsel, to instruct the jury upon any question which is not properly before them by reason of the evidence in the cause.

3. Where there is no evidence to support the finding of the jury, the judgment will be set aside and a new trial ordered.

Writ of Error to the Circuit Court for Marion county.

The facts of the case are stated in the opinion.

*Miller & Spencer* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court:

At the spring term of the Circuit Court held in and for Marion county in 1884, the plaintiff in error, James Washington, was indicted under the statute of 1883, chapter 3463, for breaking and entering a building, to wit: a meat house of Lorenzo D. Geiger, with intent to steal and carry

away  property of  less  than  the  value  of  twenty  dollars.
The allegation is that  the breaking  was in the night time.
There is no allegation that any of the property  was stolen
or any larceny committed.   This indictment was endorsed
with  the  printed  words:  " A  true  bill,"  signed  "Francis
E. Harris, Foreman."   Defendant's counsel moved to quash
the indictment upon the following grounds:

1st.  The indictment does not allege a burglarious break-
ing.

2d.  The  words, a  true  bill, are  not  endorsed upon the
back of  the indictment  by the  foreman of  the grand jury,
in writing.

3d.  That  the  foreman of  the  grand jury  does  not sign
his name as foreman of  the grand jury, but said bill is sim-
ply endorsed : " F. E. Harris, Foreman."

This  motion  to  quash  was  properly  overruled  by the
court.   See Tilly vs. The State, decided at this term of the
court, 21 Fla.

The defendant was tried  and  found guilty.   Counsel for
defendant then  moves  in  " arrest  of  judgment, and  for a
new  trial."   The  grounds  alleged  are as  follows :

" Because  the  verdict  of  the  jury  was  contrary to the
evidence, the weight of evidence, and without any evidence
to support  it," and  second : "because the indictment is so
vague, uncertain and defective that the  motion *ore tenus* to
quash the same should have been  granted, and the defend-
ant  now  shows  to  the  court  such  defects  in  the  indict-
ment in order that judgment may be arrested, viz : that
such indictment does not allege, ' a burglarious breaking
and entering '; that the words, a true  bill are not endorsed
upon the back of  the said indictment by the foreman of the
grand jury, in writing; that the foreman of the grand jury
does not sign  his name as  foreman of the grand jury, but
said bill is simply endorsed, ' F. E. Harris, Foreman.' "

This motion was overruled and exception taken.

The defendant's counsel asked the court to charge the jury as follows:

1st. That the mere possession of the stolen goods unaccompanied with other suspicious circumstances, is not evidence sufficient to convict of breaking and entering a building.

2d. Possession of stolen goods may be evidence of larceny, but not of breaking and entering a building, which is the gist of this case.

3d. The jury must give the defendant the benefit of any reasonable doubt derived from the evidence.

The court refused to give the first and second above mentioned requested charges, and gave the one numbered three.

The assignments of error cover substantially the points made above by the counsel for the defendant.

The proof on the trial of the cause shows no breaking or entering a building of any kind with intent, &c. The evidence of L. D. Geiger, as appears in the record, recites " that on the 13th day of January last, my meat house was broken into in the night time; it was locked with a padlock, the staple was broken and the meat gone—sides and shoulders ; I got a search warrant and searched the house of the prisoner on the 15th day of January ; found nothing there; we then went to a new house about a mile distant, into which prisoner was moving; this was a house into which prisoner was moving, about two and a half miles from mine. Mr. Carter, the constable, searched about the house but found nothing there, but in a hammock, about 75 or 100 yards from the house, he found four sides of meat hid in a hollow stump. The stump was in sight of the new house. The meat would weigh about 25 pounds to the piece ; was worth about fifteen cents per

pound. The meat was my meat. The prisoner and Alexander, about a week before my meat house was broken open, helped me to kill hogs which made this meat, also helped me pack it away, and was entirely familiar with the location of the meat house and my premises."

Mr. Carter testified: "I acted as constable to search the houses of Washington and Alexander; I found the meat in a stump just seventy-seven steps from a new house the prisoner was building and into which he was moving that day. This stump in which I found the four pieces of meat was on the path leading from prisoner's new house to the pond where he got water, and in full view of the house. The prisoner said he had been working there on the previous Saturday. I saw tracks leading from the new house by the stump to the pond. He, Washington, did not live there but was moving into the new house that day. He resided about a mile from there. After finding the meat I arrested him on the road with his cart hauling plunder to the new house. He did not claim the meat; said it was not his; that he had no meat on his premises. I searched Alexander's house, found no meat there. Alexander lived between the place where the meat was found and the house occupied by the defendant and about three-quarters of a mile away; saw no peculiarity about the meat; it was such meat as is generally raised and cured in that neighborhood. Mr. Geiger identified the meat as his."

This is all the evidence upon the part of the State, and yet the jury found the prisoner guilty of feloniously and wilfully breaking and entering a building, to wit: a meat house of Lorenzo D. Geiger with intent the goods, chattels and property in the said building then and there being of less than the value of twenty dollars to steal and carry away. There is no evidence tending to show any breaking or entering or stealing (which last is not charged in the in-

dictment) done by the prisoner, or of his being in possession or having the control of any property which was in the building, when so broken and entered. So far as the proof is concerned the neighbors who lived in the same vicinity might with equal propriety have been indicted and convicted. Nor is this all the evidence. The defendant called upon Mollie Alexander, who testified in his behalf as follows:

"I remember the night Mr. Geiger's meat is said to have been stolen. It was on the second Sunday night in January. I remember it because I heard of it on the next day when Washington was arrested. I know where Washington was that night; he and his wife were at my house, his wife went to church and he remained at my house. Washington slept at my house that night; he went to bed about twelve o'clock and did not get up next morning until after sunrise; I had to wake him up. He went to bed before I did, about seven o'clock. His wife returned from church about 12 o'clock. I got up and opened the door for her. Washington got up also. We built up a large fire and sat up for an hour or more. Washington did not leave the house that night that I know of. The house had but the one room. I don't think he could have left the house without my knowing it."

The defendant then was sworn and made his statement as follows: "I did not break or enter the house of Mr. Geiger or take his meat. On that night I was at the house. I stayed there all night, didn't even go to church. I am not a man who runs about after night. I didn't hide the meat in the woods and know nothing at all about it."

No possession of the alleged stolen property was proven in the defendant, and therefore the court did not err in refusing to charge upon that point.

A new trial should have been granted on the first ground

mentioned in his motion for the same "because the verdict of the jury was contrary to the evidence, the weight of evidence and without any evidence to support it."

Judgment reversed and new trial ordered.