W. E. Baggett v. Fred J. Davis.

169 So. 372.
Division B.
Opinion Filed June 27, 1936.

702

*Dickinson & Dickinson,* for Plaintiff in Error;
*George P. Garrett,* for Defendant in Error.

BUFORD, J.—Fred J. Davis instituted an action for damages against W. E. Baggett in the Circuit Court of Orange County, Florida.

The cause of action was predicated upon an automobile accident that happened at or near Robbins Cabins, about one mile west of Geneva, Ashtabula County, Ohio, when the defendant, while driving his automobile on a public highway of the State of Ohio, United States and Ohio Route 20, then and there on said public highway, so negligently and carelessly drove and ran his automobile that by reason of said carelessness and negligence the said defendant ran

the same into a certain automobile of the plaintiff causing the plaintiff to be damaged in the particulars set forth in the amended declaration.

The amended declaration consisted of three counts.

The first count sought to recover for injuries and damages inflicted on plaintiff's automobile, depreciating its value.

The second count sought to recover because that by reason of the careless and negligent manner in which defendant operated his automobile, plaintiff, who was without fault at the time as a direct result of defendant's negligence and carelessness, sustained great physical injury, rendering plaintiff unconscious, causing him to lose much time from his work while in the hospital, causing him to sustain permanent physical injuries and suffer great bodily pain, and to sustain special damage because he had to pay hospital bills, doctor bills, his clothes were ruined, he lost much time and earning capacity and divers earnings and income.

The third count was worded in exactly the same language as the second count, and in addition alleged that defendant's negligence and carelessness consisted not only of negligence in the ordinary course of driving, but by violating then and there the statutes of the State of Ohio governing the operation of automobiles on highways; that United States and Ohio Route No. 20 is a much used, main market, inter-county, public highway running easterly and westerly to and through the City of Geneva, past Robbins Cabins, Ashtabula County, Ohio. This count then set out these statutes of the State of Ohio in full as follows:

"Ohio General Code, 6310-22. Drivers of vehicles before turning, stopping or changing their course shall make sure such movement can be made in safety and shall cause signals to be made of their intention in a way visible outside of the vehicle.

"Ohio General Code, Section 6310-28. 'Right of way' means the right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which it is moving in preference to another vehicle approaching from a different direction into its path.

"Ohio General Code, Section 6310-29. A vehicle joining the flow of traffic on a road or highway from a standing position, an alley, a building, or private property shall yield the right of way to all other vehicles.

"Ohio General Code, Section 6310-30. For the purpose of enforcing the road regulations referred to in this chapter, the main thoroughfare shall be understood to mean all sections of public roads and highways on which street cars or electric cars run and also all main market and intercounty highways within the State.

"Ohio General Code, Section 12603-1. Whoever operates a motor vehicle on the public roads or highways without due regard for the safety and rights of pedestrians and drivers and occupants of all other vehicles, and so as to endanger the life, limb or property of any persons while in the lawful use of the roads or highways shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined as hereinafter provided."

It was further alleged that these statutes were in full force and effect at the time of the collision; that "plaintiff was traveling east on said highway, in the exercise of due caution, and without fault, and defendant was then and there parked with his automobile headed east along his right side of the paved highway, and as plaintiff was passing defendant, the defendant drove his said car without warning into the paved portion of the said highway in such a manner and at such a time as to cause the left front of his car to hook onto or come into contact with the right rear of plaintiff's car, thereby upsetting plaintiff's car on the paved

portion of the highway and to skid along the said pavement in said upset condition, thereby injuring plaintiff"; which was in violation of the above quoted statutes.

To the amended declaration, defendant filed two pleas: (1) a plea of not guilty and (2) a plea of contributory negligence, in that it was plaintiff's duty to operate his said automobile upon said public highway with care and caution and observe the position of other cars thereon; that notwithstanding said duty, plaintiff negligently and carelessly failed to use such ordinary care and caution, by reason of which the alleged injury, if any, was produced.

Issue was joined upon these pleas.

Trial of the cause was had on November 8, 1935, at which time evidence of both parties was heard. After hearing the argument of counsel and the instructions of the court, the jury returned a verdict in favor of plaintiff and assessed his damages at $5,000.00.

Final judgment was entered upon the verdict, from which the defendant took writ of error.

The defendant made a motion for new trial, embodying some of the grounds found in the assignment of error, which grounds will be taken up in detail on disposing of the questions presented. The motion for new trial was denied by the court.

The first question is whether the court properly admitted in evidence copies of the statutes of the State of Ohio, under the certificate of the Secretary of State of the State of Ohio. That certificate contained these statements:

"United States of America.

"State of Ohio.

"Office of the Secretary of State, ss:

"I, George S. Myers, Secretary of State of the State of Ohio, and being the officer who, under Constitution and laws of said State is duly authorized and constituted the keeper

of the statutes and laws of said State and authorized to use
the Great Seal of said State, and duly authorized and em-
powered to authenticate exemplification of said statutes and
laws of said State of Ohio, do hereby certify that the an-
nexed instrument is a full, true, correct and complete copy
of Sections 6310-22; 6310-28; 6310-29 and 6310-30 of the
General Code of Ohio, and were in full force and effect
on July 10th, 1933.

"I further certify that the said sections are in full force
and effect in said State, and that said laws are now on file
in my said office as such Secretary of State.

"That said exemplification is in due form and made by
me as the proper officer, and is entitled to have full faith
and credit given to it in every court and office within the
United States of America.

"In Testimony Whereof, I have hereunto attached my
official signature, and caused the Great Seal of the State
of Ohio, to be affixed, at the City of Columbus, this 16th
day of March, A. D. 1935.

"(Great Seal of Ohio).

"George S. Myers, *Secretary of State."*

Laws of another State must be pleaded and proved. Sid-
ney v. White, 12 Ala. 728; Southern Express Company v.
Hanaw, 134 Ga. 445, 67 S. E. 944, 137 A. S. R. 227.

"Under the constitutional provision requiring that full
faith and credit shall be given in each State to the public
Acts, records and judicial proceedings of every other State,
and authorizing Congress to prescribe the manner in which
such Acts and records shall be proved (U. S. Const., Art.
4, Par. 1), a law has been enacted providing that Acts of
the Legislature of any State or territory or of any country,
subject to the jurisdiction of the United States, may be
authenticated by having the seal of such State, territory or

country affixed thereto (28 U. S. C. A. 687). It will be observed that this statute requires no other authentication or formality than that the seal of the State be affixed to the copy of the Act to be proved. The seal itself imports absolute verity." 4 Jones Commentaries on Evidence 3155, Sec. 1721.

But mere unofficial volumes, purporting to contain statutes or digests of statutes of another State are not admissible in evidence. See Yarbrough v. Arnold, 20 Ark. 592; Dixon v. Thacher, 14 Ark. 141; Canfield v. Squire, 2 Root (Conn.) 300, 1 Am. Dec. 71; Magee v. Sanderson, 10 Ind. 261; Goodwin v. Provident S. L. Assurance Association, 97 Iowa 226, 66 N. W. 157, 59 A. S. R. 411, 32 L. R. A. 473.

The certificate of the Secretary of State of the State of Ohio shows that the purported statutes of Ohio introduced in evidence were part of the "General Code of Ohio"; but it is contended that there is nothing to show whether the "General Code of Ohio" was an official publication of the statute law of the State of Ohio or whether it was a compilation or publication of some private individual, firm or corporation of the statute law of Ohio, without official standing. The authentication of the Secretary of State would have been deficient in that it failed to state that the "Code of Ohio" from which the purported statutes were taken, was an official publication of the Legislature of the State of Ohio, if the certificate had stopped there. The statement in the certificate that the purported statutes were in full force and effect in the State of Ohio on July 10, 1933, and are at the present time, and "that such laws are now on file in my said office," etc., and the affixing thereunto of the Great Seal of the State of Ohio were sufficient to overcome the alleged infirmity. Therefore, the court did not

err under the circumstances in admitting these purported statutes of the State of Ohio in evidence.

## II.

The second question was whether or not it was permissible in this action for plaintiff to testify that he had no means of support for his family other than his wages.

In an action to recover damages for a collision between plaintiff's and defendant's automobiles, resulting in damages to plaintiff's automobile, injuries to plaintiff's person and partial loss of plaintiff's earning capacity, it is irrelevant whether plaintiff has other means of support for his family, because the theory of the case is to have the defendant compensate plaintiff for the things he lost or has been deprived of or the damages he has sustained as a result of the automobile collision. Plaintiff's testimony as to his wages being the only means of support of his family is calculated to unduly arouse the sympathy of the jury in favor of plaintiff to the detriment of the defendant. City of Belton v. Lockett (Tex. Civ. A.) 57 S. W. 687; The G. C. & S. F. Ry. Co. v. Levy, 59 Tex. 542. So the admission of this testimony was error.

### Questions III and IV.

It is contended in the third and fourth questions that the court erred in giving the following charge to the jury:

"The court instructs you that if you find from the evidence that the defendant violated any of the laws of the State of Ohio referred to in the third count of the amended declaration, you may consider this fact as bearing upon the showing of negligence on the part of the defendant."

Charges of the court must be based upon facts in proof, and if not so based upon the facts in proof it is error to give them. See Irvin v. State, 19 Fla. 872; Washington v. State, 21 Fla. 328; Lewton v. Hower, 35 Fla. 58, 16 So.

616; Doyle v. State, 39 Fla. 155, 22 So. 272, 63 A. S. R. 159; West v. State, 55 Fla. 200, 46 So. 93.

This instruction was based upon facts in evidence. The fact that the Baggett car started from the side of the main road and turned across the main road in the direction of Robbins Cabins, and in so doing collided with the Davis car, was evidence which might have tended to prove a violation of the statutes of Ohio. Testimony of plaintiff was to the effect that the Baggett car was parked on the right hand side of the road and as the plaintiff approached defendant's car from the rear, the latter, without giving any visible signal of an intention to cross the road, turned across the road and collided with plaintiff's car. This instruction did not assume that any certain set of facts had been proven, but left the conclusions to be drawn from the evidence of the jury. Consequently, there was no error in this instruction.

Plaintiff in error contends that the court erred in giving the following charge to the jury.

## V.

"The Court instructs you that, if you find from the evidence in this case, that the plaintiff did not contribute to the accident, but that on the other hand the defendant was guilty of the carelessness and negligence set forth in the amended declaration and that by reason of such carelessness and negligence the accident happened, then the Court instructs you that the plaintiff is entitled to recover such compensatory damages as the plaintiff may have suffered by virtue of the accident."

The contention that this instruction does not confine the jury to the evidence in finding the carelessness and negligence of the defendant, if any, is without merit, because in the first part of the instruction the court plainly in-

structed the jury *"if you find from the evidence,"* etc., showing that the instruction was not erroneous in that respect. Neither does this instruction contain any assumption of fact. The preface of this instruction, *"If you find,"* etc., places the duty of making the finding upon the jury, and the contention that it assumed facts as proven is without merit. No error has been found in this instruction. (Emphasis supplied.)

## VI.

It is contended that the court erred in instructing the jury as to the damages that might be recovered for loss of future earning capacity in the following language:

"And if the plaintiff shows that before the accident he was able to do certain work which, since the accident, he has not been able to do, and that *apparently* he will not be able to do such work in the future, and that thereby he has suffered financial loss, the plaintiff is entitled to recover, if you find for the plaintiff, for such financial loss." (Emphasis supplied.)

In order that a jury may assess damages for any permanent injury, it must appear to them that the injury is reasonably certain to impair the health and earning capacity of the injured person in the future; and not merely that it will apparently affect the health and earning capacity of the injured party. See Granger v. Fuller, 72 Fla. 57, 72 So. 462; 13 Cyc. 239; White v. Milwaukee City Ry. Co., 61 Wis. 536; 21 N. W. 524; Louisville Southern Railroad Co. v. Minogue, 90 Ky. 369, 14 S. W. 357, 29 A. S. R. 378. The use of the word "apparently" in this instruction renders it erroneous, because it permits the jury to award damages for loss of future earning capacity upon evidence which may not have that certainty necessary in order to recover for loss of future earning capacity.

## VII AND VIII.

It is also contended that the court erred in giving the following instruction to the jury.

"If you find for the plaintiff in this case, that is to say, if you find the defendant is responsible for the accident, under the instructions of the court and the evidence as given in the case, the plaintiff will be entitled to recover compensatory damages. These compensatory damages include damages for personal injuries and physical pain, as well as expenses incurred as the proximate result of the negligent injury. If you find same, expenses and losses may be capable of reasonably certain ascertainment, but personal injuries and physical pain cannot be measured by any standard of pecuniary value, and the law makes it the province of the jury to ascertain the amount of damages to be awarded in the latter classes of cases, subject to such powers of review as are known to the law to prevent the abuses of the discretion given to juries."

It is true that the law places within the province of the jury the duty of ascertaining the damages to be awarded in cases of personal injury and physical pain; and it is likewise true that the abuse of its discretion in the matter is reviewable by the court (See Harby v. Florida East Coast Hotel Co., 59 Fla. 280, 52 So. 193), but the jury is also entitled to an instruction laying down a rule for them to follow in ascertaining damages for physical injury and pain, so that they may not abuse their discretion in awarding such damages. Such an instruction was given the jury in the next succeeding charge in this language:

"If you find for the plaintiff, that is to say, if you find the defendant was responsible for the accident, and that the plaintiff was not responsible therefor in any way, the court instructs you that you as a jury are authorized to assess damages for the physical pain and suffering which

are inseparable from the injury, and which would necessarily and inevitably flow from it."

This instruction qualified the preceding instruction and laid down a rule for the jury to follow of which the defendant cannot be heard to complain, as it is favorable to him.

It is contended also that the last quoted instruction of the court to the jury contains a statement which assumes that the plaintiff suffered an injury, and it assumes that there would be physical pain and suffering flowing from this injury. The fact of plaintiff's injury was not disputed, but was admitted by all. From every injury there must, of necessity, be attached some degree of pain. Accordingly as the injury is great or small, so the pain will be relatively more or less, and even from the slightest injury there would be some pain. So plaintiff, having been injured, suffered some pain, the degree of which was left for the jury to determine and award compensatory damages therefor, and the instruction was not erroneous for that reason.

### IX.

It is contended that the court erred in refusing to give the following instruction to the jury, requested by defendant:

"If you find from the evidence that at the time and place of the accident alleged, the defendant was attempting to turn across the highway while driving easterly thereon, and that *before and at the time he began such attempt, he looked to the rear of his car to make sure that no one was approaching and could see no one, and at the same time held out his hand in warning of his attempt to turn across the highway,* and at such time as in the exercise of reasonable care the defendant believed or had reason to believe he could safely cross said highways before the plaintiff's car,

or any other, arrived at that place, assuming, as the defendant had the right to assume, that plaintiff would operate his car in a moderate and lawful manner, then the defendant had the right to proceed to turn across such highway and, of course, would not be under such circumstances guilty of any negligence or the violation of the law of the road." (Emphasis supplied.)

This instruction was correctly refused by the court because it assumes that a driver of an automobile which is parked on the right side of a main road, just off the pavement, may, before and at the time of beginning to turn across that road by making a left hand turn, look behind and seeing nothing, hold out his hand and proceed to turn across the road into the path of an approaching car which has subsequently appeared on the horizon. This instruction ignores the doctrine that a person who has the last opportunity to avoid an accident should do so. If the driver of the parked car that started to turn across the road had an opportunity to avoid the accident, by turning to the right or by stopping, it was his duty to do so in the interest of human safety. There may be a presumption that the other car will be driven lawfully, but when it becomes apparent that it is not being driven lawfully there is little wisdom in one imperilling human lives by driving in a manner presupposing that the other is observing the law.

## X.

It is contended that the court erred in refusing to give the following charge to the jury at the request of the defendant:

"The Court charges you that if you find from the evidence that plaintiff observed defendant's automobile at a sufficient distance from the same, and that defendant's car, at the time he did observe it, was stopped on the highway,

it was his duty to keep his car under control, and to anticipate any lawful use defendant should make of it."

This requested charge might have been perfectly proper as a charge on the law, and the court might properly have given it to the jury; but the point sought to be covered by this requested charge was covered by defendant's requested charge number nine, which was given the jury as follows:

"The court charges you that a person running an automobile on the highway is bound to take notice of other cars ahead on the highway, and to keep his car under control, so as to anticipate any lawful use of the highway by other vehicles, and to use proper care to avoid collision with other automobiles and vehicles."

The error, if any, in refusing to give the charge as requested by defendant was rendered harmless by giving another charge that covered substantially the same subject matter.

## XI AND XII.

The bill of exceptions show that counsel for plaintiff made the following statement in his closing argument to the jury:

"Gentlemen of the Jury, in considering the amount of your verdict you need not stop to consider what it will cost Mr. Baggett, the defendant, because he will not be out anything, and that same will not cost him a cent, and that he will not be one cent richer or poorer"; or words to that effect."

But to the making of that remark counsel did not object, nor did the court of its own motion admonish counsel for plaintiff or instruct the jury not to consider that statement.

The bill of exceptions also shows that counsel for plaintiff made the following statement in his closing argument to the jury:

" 'That the defendant if a verdict was found against him had a right to file a motion for a new trial, and upon the hearing of which the trial judge would determine whether the verdict should stand or fall, and that therefter if the trial judge held that the verdict should stand the defendant had available the right of appeal by writ of error to the Supreme Court of Florida where the legal errors in the proceedings might be reconsidered and readjudged, and that thereafter it would be necessary for the plaintiff to sue out an execution'; or words to that effect."

To this statement of counsel for plaintiff, counsel for defendant objected and the court immediately stopped counsel for plaintiff and stated to the jury that this statement should not be considered.

Counsel for plaintiff filed an affidavit in his motion for new trial which attempted in some measure to deny the facts as set out in the bill of exceptions as to what actually took place at the trial. This Court is governed, as regards the record of what took place at the trial, by the bill of exceptions. If the bill of exceptions does not accurately state what took place at the trial, counsel should have called it to the attention of the trial court at the time of making up and settling the bill of exceptions.

The first statement contained in the bill of exceptions made by counsel for plaintiff in the closing argument to the jury was not objected to by counsel for defendant and the court did not warn the jury not to consider it.

The grounds for objection to improper argument to the jury should be stated. Putnal v. State, 56 Fla. 86, 47 So. 864.

"The law seems to be well settled that it is the duty of the trial judge, whether requested or not, to check improper remarks of counsel to the jury, and to seek by proper instructions to the jury to remove any prejudicial effect they

may be calculated to have against the opposite party. A verdict will not be set aside by an appellate court because of such remarks or because of any omission of the judge to perform his duty in the matter unless objection be made at the time of their utterance. This rule is subject to the exception that if the improper remarks are of such character that neither rebuke nor retraction may entirely destroy their sinister influence, in which event a new trial should be awarded regardless of the want of objection or exception." Akin v. State, 86 Fla. 564, 98 So. 609.

This remark of counsel was similar in its probable effect upon the jury to the first remark of counsel objected to in the case of Akin v. State, *supra*.

The second statement made by counsel for plaintiff in his closing argument to the jury was objected to by counsel for the defendant. This statement while clearly beyond the bounds of propriety, was not calculated to do the harm nor to influence the jury as was the first improper statement. The trial court immediately cautioned the jury to disregard any such statement. The court thus corrected any error or irregularity or prejudicial influence of this remark of counsel for plaintiff. Wall v. Little, 102 Fla. 1015, 136 So. 676; Harris v. State, 75 Fla. 527, 78 So. 526; Powell v. State, 93 Fla. 756, 112 So. 608.

The jury awarded plaintiff $5,000.00 damages. It is contended that this amount was excessive under the evidence. As the case must come up for a retrial, we shall not comment on this question.

## XIV.

The question as to whether plaintiff or defendant, or either of them, were negligent under the circumstances is a question for the jury to determine when, as here, there is conflicting evidence as to negligence, and this Court is not

718

warranted in invading the province of the jury to say what we would have decided from the evidence.

For the errors pointed out herein, this judgment should be reversed.

It is so ordered.

Reversed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.