342 So.2d 829 (1977)
MEMORIAL PARK, INC., a Corporation, and Zurich Insurance Company, Appellants,
v.
Marie SPINELLI, Appellee.
No. 76-177.
District Court of Appeal of Florida, Second District.
February 11, 1977.
Rehearing Denied March 18, 1977.
*830 Charles S. Carrere of Harrison, Greene, Mann, Rowe & Stanton, St. Petersburg, for appellants.
William F. Blews of Blews & Everhart, and Dominic Amadio of Amadio & Woodruff, St. Petersburg, for appellee.
GOBBIE, EVELYN, Associate Judge.
Appellant Cemetery, MEMORIAL PARK, INC., defendant below, appeals from a final judgment rendered against it and its insurance company in a wrongful death action brought by the decedent's administratrix. This case involves a collision between a southbound motor vehicle, emerging from appellant's private driveway, and a motorcycle approaching from the west on 54th Avenue North in St. Petersburg. The motorcyclist was killed immediately upon impact on 54th Avenue.
Since the driver of the motor vehicle (one Mrs. Knupfer) settled with appellee for $10,000 during the trial, she is not involved in this appeal. The jury awarded appellee $210,000 and judgment was entered for $200,000. This appeal followed.
Appellant will be referred to as the Park; the driver of the motor vehicle as Mrs. Knupfer and the decedent as Mr. Spinelli.
Appellee maintained that the Park was negligent in placing a Nativity sign at the entrance of its Cemetery, known as Memorial Park. (The accident occurred just before Christmas). It was claimed that the sign obstructed Mrs. Knupfer's line of sight between her and Mr. Spinelli, thus causing the collision. The sign invited the public to visit a Nativity scene in the Park and had an arrow pointing into the Cemetery. Its dimensions were 4' X 3', with a 4'6" post holding it up. It was located 21'11" from *831 the side of 54th Avenue North, 17'3" from the Cemetery fence line and 10' from the side of the private driveway. The Park had inadvertently placed it on the public right-of-way.
Basically, two grounds are argued for reversal:
1. The trial court erred in admitting into evidence a copy of Section 316.135(2), Florida Statutes, and giving Florida Standard Jury Instruction 4.11 with relation thereto.
2. The trial court erred in denying defendant's motion for a directed verdict.
Both grounds are well taken.
Although it is unnecessary to decide upon the first ground since the trial court is reversed for failure to grant a directed verdict, this court feels that such a course may be of assistance to the Bench and Bar in the future.
In order to determine the propriety of the lower court's action, it is necessary to consider the statute as a whole. Section 316.135, Florida Statutes, reads as follows:
"Display of unauthorized signs, signals or markings
(1) No person shall place, maintain or display upon or in view of any highway any unauthorized sign, signal, marking or device which purports to be or is an imitation of or resembles an official traffic control device or railroad sign or signal, or which attempts to direct the movement of traffic, or which hides from view or interferes with the effectiveness of any official traffic control device or any railroad sign or signal.
(2) No person shall place or maintain nor shall any public authority permit upon any highway any traffic sign or signal bearing thereon any commercial advertising.
(3) This section shall not be deemed to prohibit the erection upon private property adjacent to highways of signs giving useful directional information and of a type that cannot be mistaken for official signs.
(4) Every such prohibited sign, signal or marking is declared to be a public nuisance and the authority having jurisdiction over the highway is empowered to remove the same or cause it to be removed without notice."
The substance of Standard Jury Instruction 4.11, which provides as follows, was read to the jury:
"Violation of a traffic regulation prescribed by (statute) (ordinance) is evidence of negligence. It is not, however, conclusive evidence of negligence. If you find that a person alleged to have been negligent violated such a traffic regulation, you may consider that fact, together with other facts and circumstances in determining whether such person was negligent."
The lower court looked upon the sign as a "traffic sign" under the statute but all it amounted to was a sign "giving useful directional information and of a type that cannot be mistaken for official signs." It came within the intent of (3), but for its location. Its only transgression was being on the right-of-way, giving appellee a so-called "out."
The appellee called an expert witness to express opinions as to whether or not the subject sign would have obscured the line of visibility between the vehicle and cycle. Upon this predicate, the offending (2) was admitted, followed by the "violation of a traffic regulation" charge. Since it was not a traffic sign, (2) was inapplicable and the "violation" instruction was error. Charges to the jury must be based upon facts in proof and if not so based, it is error to give them. Baggett v. Davis, 124 Fla. 701, 169 So. 372 (1936).
Even assuming arguendo it was a traffic sign, it would still have been error since the purpose of admitting (2) was a predicate for the "obstruction of visibility" testimony. There is no causal connection between the sign bearing "commercial advertising" and the accident. The statute has no provision against signs obstructing visibility of traffic.
*832 Appellee's contention that this sign attempted to direct the movement of traffic is without merit. In no possible way can it be designated an "official traffic sign." Although, technically, it was on the public right-of-way, it came under the intent of (3). To have allowed the jury to consider it as a traffic sign was extremely misleading.
As set forth in (1), the legislature wished to protect the driving public by preventing persons from tampering with official traffic control devices  from imitations, attempts to direct the movement of traffic, hiding signs from view or interfering with their effectiveness. From a reading of (1), it is obvious that the purpose of (2) was to prevent persons from putting up their own advertising signs on official traffic signs or controls, thus prohibiting private enterprise from utilizing official signs for their own private purpose but even more importantly, to prevent diverting the public's attention from the sign or signal itself, thus creating a traffic hazard.
Comment (i), Page 28, Section 286, Restatement of Torts (Second Edition-1965), provides the following:
"A statute or ordinance may be construed as intended to give protection against a particular form of harm to a particular interest. If so, the violation of the enactment will not be negligence unless the harm which the violation causes is that from which it was the purpose of the enactment to protect the other."
The trial court erred in determining that the Nativity sign was a "traffic sign" falling within the confines of Section 316.135(2), Florida Statutes. Section 2 should not have been admitted into evidence and Florida Standard Jury Instruction 4.11 should not have been given.
Let us now turn to the trial court's denial of the defendant's Motion for Directed Verdict. It is readily agreed that it is reversible error to direct a verdict when there is some substantial evidence tending to prove the plaintiff's case. Hill v. American Home Assurance Company, 193 So.2d 638 (Fla.2d DCA 1966). We also have no quarrel with the proposition that for the purpose of a Motion for Directed Verdict, the truth of all facts is admitted, as well as every conclusion or inference that could be drawn favorable to the adverse party. Further, if the evidence is conflicting or different conclusions or inferences could be drawn, the motion must be denied. This is basic law and these words have been said many times, many ways. However, it is still basic law that when the evidence considered in its entirety and reasonable inferences to be drawn therefrom fail to prove the plaintiff's case, it is appropriate to direct a verdict for the defendant. Hartnett v. Fowler, 94 So.2d 724 (Fla. 1957).
As previously set forth, the sign's dimensions were 4' X 3', with the base 4'6" from the ground. It was located 21'11" from the roadway. Mrs. Knupfer said she stopped at a point where the front of her automobile was approximately 23' from the edge of the roadway before proceeding forward.
The dimensions involved are the pivotal point. Mrs. Knupfer was, as one witness put it, "quite a ways from the actual road," when she stopped. Another witness testified, "She started to cross the road as though she saw nothing, right into the path of the motorcycle."
Mrs. Knupfer herself testified that when she stopped, there was nothing obstructing her view. However, assuming, arguendo, the sign obscured her vision to the west when she stopped 23' from the roadway, it is undisputed that she had a clear, unobstructed view to her right, once she passed the sign. Even if the sign obstructed her vision, it did not cause the accident. In no possible way could it have done so. She said she stopped, looked to her left, then to her right, and then went straight ahead. It is significant that when asked if she looked again to her left and right, after that, she replied, "I convinced myself that nobody was coming," and then looked straight ahead, driving toward the road, without looking again. Nothing is more obvious than had Mrs. Knupfer looked again to her right, after she passed the sign, she would have had a completely unobstructed view of *833 the deceased approaching on his motorcycle. Had she only done so, this tragic accident would never have occurred.
If someone is negligent, then he or she must pay for the transgression. However, one cannot pluck negligence out of the air. As Justice Cardozo so aptly put it, in the landmark case of Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99 (1928),
"... the orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty."
Again,
"... The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension."
Foresight of harm lies at the foundation of the duty to use care and therefore of negligence. 57 Am.Jur.2d, Negligence, Section 58. As the court stated in Smith's Bakery, Inc. v. Jernigan, 134 So.2d 519 (Fla.1st DCA 1961), "... `foreseeability' is an essential element of actionable negligence." See also this court's opinion in Adair v. The Island Club, 225 So.2d 541 (Fla.2d DCA 1969), on the significance of foreseeability.
In order to be negligent, the Park would have to have foreseen that someone would leave without checking traffic after passing the sign (21'11" from the road). Such foreseeability is not only unrealistic but against all common sense.
This court is cognizant of the fact that whenever possible a jury verdict should be judicially honored. Therefore, when a verdict as rendered is consistent with applicable principles of law, it should be allowed to lie undisturbed. Where, as here, that verdict does not meet the required standard, it must be set aside. Accordingly, the judgment appealed is reversed with directions that it be set aside and judgment entered for the defendant.
Reversed.
GRIMES, Acting C.J., and SCHEB, J., concur.