812 So.2d 461 (2002)
TELEMUNDO NETWORK, INC., a Delaware corporation, Appellant,
v.
SPANISH TELEVISION SERVICES, INC., etc., Appellee.
No. 3D00-209.
District Court of Appeal of Florida, Third District.
March 6, 2002.
Rehearing Denied April 17, 2002.
*462 Adorno & Zeder and Alan Rosenthal and Raoul G. Cantero, III and Jack R. Reiter, for appellant.
Kendall Coffey; Diaz & O'Naghten and Carlos De Zayas; Sale & Kuehne and Benedict Kuehne and Susan Dmitrovsky, for appellee.
Before SCHWARTZ, C.J., and FLETCHER, and SORONDO, JJ.
FLETCHER, Judge.
In this action for breach of contract, both parties find fault with the trial court's post-trial rulings. The defendant, Telemundo Network, Inc., [Telemundo] claims error in the denial of its motion for judgment in accordance with its motion for directed verdict and for new trial, while the plaintiff, Spanish Television Services, Inc., [STS] contends the trial court erred in granting a remittitur of the jury verdict. We find no merit in either party's arguments and affirm.
In late 1994, Telemundo, a Spanish language television broadcast network, began *463 negotiations with STS, a producer and distributor of Spanish language programming, for the right to broadcast in the United States "Mas Alla Del Horizonte," a serial program. By February of 1995, the parties, who had a prior long-term business relationship, had orally reached an agreement on the general terms of a licensing arrangement whereby Telemundo acquired the right to air 170 episodes for $5,000 each (for a total of $850,000). A problem arose, however, when the parties attempted to put their arrangement into writing. Telemundo was dissatisfied with the original agreement prepared by its counsel because it omitted a fall-back provision to which Telemundo claims the parties agreed and which would have allowed Telemundo to pay a reduced price in the event the program did not achieve acceptable ratings when aired in prime time and had to be moved to a daytime slot. Although STS' principals signed the first draft of the agreement, STS claims the document included a termination clause which the parties had never previously used and which STS had not agreed to. This termination clause provided Telemundo the right to terminate the contract unilaterally by giving written notice within 60 days if it found the program was not in its best interest.
STS never executed the second, revised agreement forwarded to them by Telemundo's counsel, and before the parties could iron out their differences to the point where they could execute a final agreement, Telemundo underwent a change of management. The new management believed the subject program would not appeal to its viewers and instructed its counsel to withdraw its offer to acquire the program. Soon after receiving a letter informing them of this withdrawal, STS initiated the instant action asserting, among other claims, breach of an oral and written contract.
After a ten-day trial, the jury concluded that the parties had entered into an oral contract which Telemundo had breached. The jury awarded $2.6 million in damages to STS. Telemundo moved for relief by way of motions for a directed verdict, a new trial, or a remittitur. The trial court granted the remittitur, reduced the jury's award to $850,000, but denied all other relief.
Telemundo raises two issues on appeal. First, it claims the trial court erred in not granting a directed verdict limiting the damages in accordance with the termination clause contained in the initial written agreement. According to Telemundo, the evidence at trial demonstrated that this provision, which gave Telemundo the right to unilaterally terminate the agreement if the programming was not in its best interests, was part of the oral agreement, and that the 60-days notice period began on the date of the letter withdrawing the offer. However, the record reflects that the evidence as to the actual terms of the parties' oral agreement was in conflict and that there was sufficient evidence to support the conclusion, implicit in the jury's general verdict in favor of STS, either that the termination clause was not a part of the parties' agreement or that Telemundo never properly invoked it. See Stutzke v. Kohl, 576 So.2d 356 (Fla. 4th DCA 1991) (finding sufficient evidence to support the jury's conclusions regarding the terms of an oral agreement); Lockwood v. Test, 160 So.2d 142 (Fla. 2d DCA 1964) (same).
Telemundo also argues that it was entitled to a new trial because of plaintiff counsel's improper closing argument at trial. Pointing to the $2.6 million verdict as evidence, Telemundo claims the argument was highly inflammatory and appealed to the passions and prejudices of the jury. *464 Telemundo's trial counsel, however, failed to object contemporaneously to any of opposing counsel's closing comments. And, although as Telemundo points out the Florida Supreme Court has recognized an exception to the contemporaneous objection requirement in civil cases where a party raises the issue in a motion for new trial, we do not find the argument herein "to be so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury." See Murphy v. International Robotic Sys., Inc., 766 So.2d 1010, 1029 (Fla.2000).
On STS' cross-appeal, we find no abuse of discretion in the trial court's reduction of the jury verdict. It is clear that the maximum amount STS would have received had the contract been performed as intended by the parties was $850,000. Damages in a breach of contract action are intended to place the injured party in the same position he or she would have been in had the breach not occurred. See, e.g., Sharick v. Southeastern University of Health Sciences, Inc., 780 So.2d 136, 138 (Fla. 3d DCA 2000); Koplowitz v. Girard, 658 So.2d 1183 (Fla. 4th DCA 1995); Juvenile Diabetes Research Foundation v. Rievman, 370 So.2d 33, 35 (Fla. 3d DCA 1979).
For the foregoing reasons, we affirm the final judgment.
SORONDO, J. (specially concurring).
I agree with Judge Fletcher's view that there was sufficient, albeit conflicting, evidence to support the jury verdict below.[1] For reasons that differ from those expressed by Judge Fletcher, I also believe that counsel for STS's closing argument, although highly improper, does not require reversal.
Telemundo argues that this Court should reverse for a new trial because of the improper closing argument made by counsel for STS. During his summation, counsel made nationalistic arguments that were improper. Before addressing the specifics of these comments, it is important to know that over Telemundo's objection, STS elicited evidence during trial that it was an American-owned company and that Telemundo was owned by foreigners. STS's final argument, as pertinent to this discussion, began as follows:
This case, this trial, for the last nearly ten days, is all about power and dignity; the power and dignity of a person's word.
Does integrity in business exist in the United States of America in the 1990's? Is a promise a promise in business, as in life?
You, members of the jury, are the promise-keepers for today, for it is your duty, your obligation, yes, your responsibility to hold Telemundo liable and to hold it to its promise; its agreement.

You, jurors in Courtroom 8-1, have the power to tell a large, mega-giant corporation, a television giant, what all America knows, what the law requires, that people, companies, no matter how big or small, must keep their promises in America; ...

This is America, where, in business, an agreement, a deal still means something. This is America, where a handshake is often times more important than all the lawyers, all the businessmen, all the powerful accountants *465 and technicians that Telemundo can muster; where a simple agreement, a simple agreement sealed by a handshake is far more powerful and all-encompassing than any loophole or advantage big corporate giants can try to bring to work to their advantage. This is America, and in the courtrooms of America, money and power and influence mean nothing; where television giants have no power to rob, and steal or mislead good, solid, honest businessmen, and if they do, like Telemundo has attempted to do in this case, you will compel them, force them, require them to honor their bargain, and why is that?[2]
(Emphasis added). Despite STS's arguments to the contrary before this Court, this nationalistic appeal permeated counsel's summation. Similar comments followed:
He unilaterally determinedwithout ... so much as taking a single look at [the program], he trashed the program. He disparaged the program. He made false claims about the program, all to get rid of the program.
Why? Shocking, in America.
(Emphasis added). The theme continued:
So, according to Telemundo, a handshake does not mean, "[w]e have a deal or a contract," because they decided Telemundo decided, "[w]e need to make money."
In our world, in the world in America, we call that bait-and-switch. It's illegal.
* * * *
Spanish Television gave its valuable product. Telemundo took that valuable product and promoted that product; declared it as its own to the world, and when you consider this contract and this agreement, with Judge Dean telling you that an oral contract is just as binding or just as valid, just as good in America as a written contract, you are going to need to look at twotwo items for a valid contract to exist.
* * * *
So when you, at the end, are looking at this case, deciding, "[h]ow do we, members of the jury, make Spanish Television,... whole? How do we restore Spanish Television to the place it occupied prior to the malevolence, the bad faith, the greed worked by Telemundo? How do we do that," you have the responsibility to decide.
You have the opportunity to be heard on an issue so crucial to the life of Spanish Television, but more, as to how business is going to be conducted in America involving television programming.
(Emphasis added). Counsel's final remarks in closing were the following:
"What is the dollar amount of damages?" From a minimum of $850,000, to the real value of the program, to the lost opportunity costs, to the additional out-of-pocket costs engaged in by Spanish Television, and what you're going to do is recognize that, in this case, as jurors in this case, you define corporate America; you define our very existence by the deeds of its people; by the conduct of its businesses; by the ability of people to reach agreement, to follow through on that agreement and not walk away from that agreement without paying the consequence; without paying the price, because you, members *466 of the jury, you have the ability to tell mega-giant Telemundo, "You made a promise. We will make you keep that promise."

(Emphasis added). As is apparent from the transcript, counsel for STS repeatedly returned to the improper nationalistic theme he injected into the case during his initial comments in summation. I find the argument to be improper, highly inflammatory and unfairly prejudicial.
Telemundo recorded no contemporaneous objection to any of these comments. It did, however, move for a new trial and argued the impropriety of these comments therein. See Murphy v. International Robotic Sys., Inc., 766 So.2d 1010 (Fla.2000). According to Murphy, "a civil litigant may not seek relief in an appellate court based on improper, but unobjectedto, closing argument, unless the litigant has at least challenged such argument in the trial court by way of a motion for new trial even if no objection was voiced during trial." Id. at 1027. Having raised the objections in its motion for new trial, Telemundo can argue that the unobjectedto statements during summation were fundamental and that reversal is appropriate.
Murphy established a four prong test to be applied by a trial court when considering unobjectedto statements on a motion for new trial. An analysis of these leads me to the conclusion that Telemundo is not entitled to relief on this claim.

1. THE CHALLENGED ARGUMENT MUST BE IMPROPER
In Murphy, the Florida Supreme Court stated that "to receive a new trial in a civil case based on unobjectedto closing argument, a complaining party must first establish that the argument being challenged was improper." Id. at 1028. Seeking to define the purpose of closing argument the court said:
The purpose of closing argument is to help the jury understand the issues in a case by "applying the evidence to the law applicable to the case." ... Attorneys should be afforded great latitude in presenting closing argument, but they must "confine their argument to the facts and evidence presented to the jury and all logical deductions from the facts and evidence."
Id. (citations omitted). The jingoistic rhetoric employed by counsel for STS accomplished nothing in furtherance of these goals. Its obvious purpose was to highlight the irrelevant evidence introduced by STS that it was an American company suing foreigners. The issue in this case was the existence, or non-existence, of a contract. This was not an Olympic contest where national pride and loyalty encourage a desire to see one competitor prevail over another. Indeed, Murphy warns against just this sort of argument:
[C]losing argument must not be used to "inflame the minds and passions of the jurors so that their verdict reflects an emotional response ... rather than the logical analysis of the evidence in light of the applicable law."
Id. (citation omitted). The comments made by counsel were clearly intended to inflame the jury. This is evidenced by the comments themselves, and, ultimately, by the jury verdict that awarded money damages that were more than three times the amount STS would have received had there been no breach of the contract. The argument was clearly improper.

2. THE ARGUMENT MUST BE HARMFUL
"Should a complaining party establish that the unobjectedto argument being challenged is improper, the party must then also establish that the argument being challenged is harmful." Murphy, 766 *467 So.2d at 1029. The arguments at issue were harmful. The nationalistic tone set by the argument, along with counsel's repeated return to how things were done "in America," encouraged the jury to vote for the "home team" and against Telemundo's foreign ownership. Although the closing argument in this case did not specifically slander a particular ethnic group, it sought to distinguish Telemundo's owners from STS's on the basis of the fact that their ethnic origin was not American. The comments clearly suggested that American concepts of how to conduct business were more honorable than those embraced by the foreigners who own Telemundo, and that the jury should send them that message with their verdict. I cannot conceive of a more harmful line of argument.

3. THE ARGUMENT MUST BE INCURABLE
The third prong of the test is the most severe, and evinces the Supreme Court's intent to reduce to a minimum the number of reversals based on fundamental error in this area. In considering this third prong the court said:
Should a complaining party establish that the unobjectedto closing argument being challenged is both improper and harmful, the party must then establish that the argument is incurable. Specifically, a complaining party must establish that even if the trial court had sustained a timely objection to the improper argument and instructed the jury to disregard the improper argument, such curative measures could not have eliminated the probability that the unobjectedto argument resulted in an improper verdict.

Murphy, 766 So.2d at 1030 (emphasis added). The court noted that it would be "extremely difficult for a complaining party to establish that the unobjectedto argument is incurable." Id. In Baggett v. Davis, 124 Fla. 701, 169 So. 372, 379 (1936), the Supreme Court defined the word incurable in this context as referring to remarks that are "of such character that neither rebuke or retraction may entirely destroy their sinister influence." Given this definition, I cannot conclude that the argument made in this case was incurable. Had counsel for Telemundo made an objection immediately after the initial appeal to the jury's nationalistic sympathies, the trial judge could have sustained the same, instructed the jury to disregard the statement, and forbidden counsel for STS from making any further, similar argument. The harm caused by the comments at issue was primarily due to their repetition throughout the argumenta timely objection would have cured whatever harm may have been caused by STS's single, initial comment.

4. THE ARGUMENT MUST BE SUCH THAT IT SO DAMAGED THE FAIRNESS OF THE TRIAL THAT THE PUBLIC'S INTEREST IN OUR SYSTEM OF JUSTICE REQUIRES A NEW TRIAL.
Murphy specifically says that only where the complaining party has established that the unobjectedto argument was improper, harmful and incurable does the analysis move to the fourth prong. Id. at 1030. Accordingly, my conclusion as to Murphy's third prong obviates the need to address the fourth.

CONCLUSION
Based on the evaluation set forth above, I conclude that under the guidelines set forth in Murphy, the trial judge did not abuse her discretion in denying Telemundo a new trial. I feel compelled to add, however, that but for Murphy, I would reverse and remand for a new trial.
*468 The third prong of the Murphy test makes a finding of fundamental error in civil cases a virtual impossibility. This was not the product of inadvertence. In his conclusion, Justice Lewis, writing for the majority, states:
Although we have not absolutely "closed the door" on appellate review of unpreserved challenges to closing argument, we have come as close to doing so as we believe consistent with notions of due process which deserve public trust in the judicial system.
Id. at 1031. It is clear, therefore, that the court wanted to all but foreclose the concept of fundamental error in this area.
I believe that almost all errors are curable by way of a carefully crafted cautionary instruction. It appears that a majority of the Justices feel the same way, as they acknowledged that it would be "extremely difficult ... to establish that the unobjectedto argument is incurable." Id. at 1030. The only argument I can think of that might be characterized as such is the "cat-out-of-the-bag" scenario. For example, where by pre-trial order in limine the trial court has forbidden the introduction of a particular fact or the making of a specific argument during trial because of its overwhelming prejudicial effect, and counsel defies the pre-trial order. The making of such an argument might be incurable, since the court could conclude that an instruction to disregard such a prejudicial remark would be useless. Although this scenario is possible, in reality, it is difficult to conceive of such a monumentally prejudicial statement not drawing an objection. Not only would opposing counsel have to be asleep at the wheel, the presiding judge would also have to be completely distracted not to recognize the contumacious disregard of a pre-trial ruling of such magnitude. I would think that under such circumstances, the trial judge himself or herself would interrupt the offending attorney and address the issue at sidebar.
In her concurring opinion in Murphy, Justice Pariente articulated her concern that the four prong test for fundamental error "might unnecessarily restrict the authority of trial courts to grant new trials." Id. at 1032. She went on to say:
I would still retain the right of appellate courts to reverse for fundamental error where the conduct "so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial."
Id. (citation omitted). I agree with this general statement but believe it defies a bright-line test. In the present case, although STS's appeal to the jury's nationalistic sympathies could have been cured by a timely objection, the repeated references undermined the fairness of the trial. Few things strike more directly at the heart of our system of justice than an argument designed to appeal to a jury's darkest instincts. Whether the arguments made in this case are perceived to be an appeal to the jury's ethnic prejudices or to general xenophobic instincts, they clearly did not constitute fair comment on the law and the evidence, and they were improper, highly inflammatory and unfairly prejudicial.[3] I *469 vote to affirm the trial court's denial of Telemundo's motion for new trial because I feel compelled to do so by the Florida Supreme Court's decision in Murphy. If I were writing on a clean slate, however, I would conclude that STS's closing argument "so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial."
SCHWARTZ, Chief Judge (dissenting in part).
Although I agree with the court's rejection of Spanish Televisions's point on cross-appeal, I think the majority is wrong as to both of Telemundo's arguments for reversal of the judgment entered below.

I.
As I read the testimony, particularly that of Spanish Television's principal Llorens, it unequivocally establishes that the oral agreement sued upon incorporated the entire contents of the previous written proposals, specifically including the sixty-day cancellation provision which is now in question. He stated:
Q: I am going to show you, sir, Plaintiff's Exhibit 20, [the Written Memorialization which included the cancellation] in evidence. I ask you to look at it carefully and tell me if this is what was waiting for you at the office when you got back to Miami.
A: Yes. That was the deal that we had closed.
Q: Did that written agreement reflect exactly the terms that you had reached in your verbal agreement?
A: Uh-huh, yes. Totally.
Llorens further testified:
Q: Back in January or February of 1995, Mr. Llorens, when you claim to have reached an oral agreement with Telemundo, did you understand that oral agreement to include the terms and conditions that are normally contained in the written license agreement that would follow?
A: Yes.
Because there is thus no legitimate conflict in the record either as to this point or the fact that Telemundo's letter of March 22, 1995, which stated its outright refusal to perform, appropriately invoked the cancellation clause, see Paradise v. Augustana Hosp. & Health Care Center, 222 Ill. App.3d 672, 165 Ill.Dec. 147, 584 N.E.2d 326 (1991), the prevailing law is that recovery is permitted only for damages incurred during the period for which notice of cancellation was required. Maytronics, Ltd. v. Aqua Vac Systems, Inc., 277 F.3d 1317 (11th Cir.2002)(applying Florida law); Mark Seitman & Assoc., Inc. v. R.J. Reynolds Tobacco Co., 837 F.2d 1527 (11th Cir.1988)(limiting damages to notice period even though plaintiff lost its entire business); see Bernhardt v. Jacksonville Medical Center, Inc., 543 So.2d 833 (Fla. 1st DCA 1989)(holding that when a hospital terminated a doctor's employment relationship without notice, damages were limited to the amount due during the 90-day termination period set forth in the contract); Smalley Transp. Co. v. Bay Dray, Inc., 612 So.2d 1182 (Ala.1992); 25 C.J.S. *470 Damages § 74 (1966). In this case the damages recoverable during the applicable period of sixty days unquestionably could not exceed $170,000.00. I would therefore limit Spanish Television's recovery to that amount.

II.
I also do not agree with the court's refusal to require a new trial because of the admittedly improper final argument of Spanish Television's counsel. In my view, the perniciousness of the jingoistic, xenophobic argument, particularly when carried to the repugnant lengths involved here, see Telemundo Network, Inc. v. Spanish Television Services, Inc., 812 So.2d 461 (Fla. 3d DCA 2002)(Sorondo, J., specially concurring), fully satisfy each of the requirements stated in Murphy for reversal on these grounds, even in the absence of contemporaneous objection. To address the basis of Judge Sorondo's contrary position, I would argue thatunlike, for example, an improper characterization of the evidence at trial or a reference to inadmissible hearsay, as to which a contrary statement by the court might well serve to vitiate the damage[4]this kind of argument simply cannot be effectively cured by "rebuke nor retraction [which would] entirely destroy [its] sinister influence." [e.s.] Baggett v. Davis, 124 Fla. 701, 717, 169 So. 372, 379 (1936). See Stensby v. Effjohn Oy Ab, 806 So.2d 542, 544 n. 1 (Fla. 3d DCA 2001)(no abuse of discretion to grant new trial on grounds of "the inexcusable [though unobjected to] intimation of religious prejudice on the part of the defendants. See Murphy v. International Robotic Sys. Inc., 766 So.2d 1010, 1030 (Fla.2000); Owens Corning Fiberglas Corp. v. Morse, 653 So.2d 409 (Fla. 3d DCA 1995), review denied, 662 So.2d 932 (Fla.1995); George v. Mann, 622 So.2d 151 (Fla. 3d DCA 1993), review denied, 629 So.2d 134 (Fla.1993); Simmons v. Baptist Hosp., 454 So.2d 681 (Fla. 3d DCA 1984); La Reina Pharmacy, Inc. v. Lopez, 453 So.2d 882 (Fla. 3d DCA 1984).").
In a broader sense, I do not believe that anything in the law, including Murphy, requires a reviewing court to lay aside a conscientious conclusion, such as the one I entertain here, that no verdict which follows a final argument like this one may, with justice, be permitted to stand. Borden, Inc. v. Young, 479 So.2d 850 (Fla. 3d DCA 1985), review denied, 488 So.2d 832 (Fla.1986); Kaas v. Atlas Chemical Co., 623 So.2d 525 (Fla. 3d DCA 1993).
For these reasons, I would reverse for a new trial at which, if it prevails, Spanish Television may recover no more than $170,000.00.

CERTIFICATE
PER CURIAM.
We certify to the Supreme Court of Florida that the foregoing decision passes upon the following question of great public importance:
ARE UNOBJECTED TO COMMENTS MADE DURING CLOSING ARGUMENT WHICH APPEAL TO A JURY'S RACIAL, ETHNIC, RELIGIOUS OR XENOPHOBIC PREJUDICES, SUFFICIENT TO JUSTIFY AN APPELLATE COURT'S FINDING OF FUNDAMENTAL ERROR UNDER MURPHY?

*471 SCHWARTZ, C.J., and SORONDO, J., concur.
FLETCHER, J., dissents.
NOTES
[1] Judge Schwartz's dissent accurately quotes a portion of Mr. Llorens's response during cross-examination. It does not, however, quote other statements made by the witness during both cross and re-direct examinations, which create conflicts sufficient to send to the jury.
[2] I note that there was no evidence presented in this case that established that Telemundo robbed or stole anything. This accusation of criminal activity was completely unfounded.
[3] In discussing the fourth prong of this test, that the argument must be such that it so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial, the Supreme Court specifically identified an example:

Although we do not specifically limit the types of improper argument that may fit within this category, we recognize that the category necessarily must be narrow in scope. For example, closing argument [sic] that appeals to racial, ethnic, or religious prejudices is the type of argument that traditionally fits within this narrow category of improper argument requiring a new trial even in the absence of an objection. Id. at 1030 (emphasis added). But for the fact that the court specifically stated that one does not reach the fourth step of the analysis unless the first three have been established, I would have voted to reverse under this language. I believe that this consideration, should be available to appellate courts, not as a fourth step of the Murphy analysis, reachable only where the other criteria have been established, but as an alternative to that criteria. In short, where the conduct "so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial." Murphy, 766 So.2d at 1030.
[4] We have previously referred to a trial judge's instruction to disregard offending testimony or argument as "of legendary ineffectiveness." Malcolm v. State, 415 So.2d 891, 892, n. 1 (Fla. 3d DCA 1982). See also Dunn v. United States, 307 F.2d 883, 886 (5th Cir. 1962)("if you throw a skunk into the jury box, you can't instruct the jury not to smell it").