727 So.2d 1033 (1999)
William K. FRAVEL, D.M.D., et al., Appellants,
v.
Alan HAUGHEY, et al., Appellees.
No. 97-2718.
District Court of Appeal of Florida, Fifth District.
February 18, 1999.
*1034 Shelley H. Leinicke of Wicker, Smith, Tutan, O'Hara, McCoy, Graham, & Ford, P.A., Ft. Lauderdale, for Appellants.
Christopher M. Larmoyeux of Montgomery & Larmoyeux, West Palm Beach, and Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for Appellees.

EN BANC
ANTOON, J.
Alan and Joan Haughey (plaintiffs) sued William K. Fravel, D.M.D., and William K. Fravel, D.M.D., P.A. (Dr. Fravel), alleging that their daughter Emily was injured as a result of Dr. Fravel's negligent orthodontic treatment. The plaintiffs claimed Dr. Fravel negligently failed to diagnose and treat a degenerative condition in Emily's jaw known as idiopathic condyle resorption, and that this negligence resulted in permanent injury to Emily. The jury returned a verdict against Dr. Fravel and a judgment was entered accordingly. This court has sua sponte elected to consider this case en banc. See Fla. R.App. P. 9.331(a). We affirm the jury's finding of liability but remand this matter for reconsideration because the record evidence does not support the jury's award of future medical expenses.
Dr. Fravel first argues that he is entitled to receive a new trial because the trial court erred in refusing to allow his attorney to cross-examine the plaintiffs' expert using an authoritative medical text. Dr. Fravel attempted to cross-examine the expert by using an article from the Journal of Clinical Orthodontics. The plaintiffs objected, arguing that Dr. Fravel had failed to establish the proper predicate since the expert indicated that he was unfamiliar with the article. Dr. Fravel asked the trial court to take judicial notice that the article was authoritative or to allow him to "lay a foundation by other testimony." The trial court incorrectly ruled that Dr. Fravel could use the article for cross-examination only if the expert was familiar with it.
The trial court has the discretion to find a writing authoritative despite an expert's failure to recognize the writing or the author. See § 90.706, Fla. Stat. (1995). In such situations, the trial court must give the party proffering the article an opportunity to establish that the writing is authoritative through the testimony of other witnesses. See Chesterton v. Fisher, 655 So.2d 170, 171 (Fla. 3d DCA 1995). However, in this case the substance of the article was not made known to the trial court. Neither the article nor testimony establishing the predicate of authoritativeness was proffered by Dr. Fravel. By failing to make such a proffer, Dr. Fravel waived his right to appellate review of the trial court's error. See § 90.104(1)(b), Fla. Stat. (1995).
Dr. Fravel next argues that the trial court erred in denying his motion for new trial. The motion was based on the claim that the plaintiffs' attorney had made improper comments during his closing argument including comments requesting the jury to act as the conscience of the community and accusing Dr. Fravel, his attorney, and his witnesses of committing perjury. Dr. Fravel maintained that this improper argument constituted fundamental error and thus was a valid basis for new trial. We agree that the statements made by the plaintiffs' attorney during closing argument were improper and inflammatory, but conclude that the trial court properly determined that the comments did not constitute fundamental error.
Just like with any other trial error, lawyers have a duty to object to improper comments made during closing arguments, *1035 and the failure to raise a contemporaneous objection constitutes waiver. We recognize that this court has previously held that civil judgments may be reversed on appeal based on improper argument, even in the absence of a contemporaneous objection, when the improper comments are so extensive that they deprive a party of receiving a fair trial. See e.g., Schubert v. Allstate Ins. Co., 603 So.2d 554 (Fla. 5th DCA), rev. dismissed, 606 So.2d 1164 (Fla.1992). In doing so we have probably been more generous than other districts in determining that improper arguments can constitute fundamental error in the hope that reversals would curb bad practice. However, judging by the frequency with which this issue continues to be raised, at least in our court, these rulings have not seemed to have had the intended effect of discouraging such conduct. In fact, a case could be made that these rulings have encouraged lawyers to allow improper argument to be submitted to the jury without objection.[1] Unfortunately, calculating lawyers may choose to remain silent when confronted with improper argument in hopes that, if the verdict is unfavorable to their client, relief might be available in the appellate court based upon review of the improper argument. This paradox was poignantly observed by Judge Griffin in her dissent in Walt Disney World Co. v. Blalock, 640 So.2d 1156, 1159 (Fla. 5th DCA), rev. dismissed, 649 So.2d 232 (Fla.1994):
[A] party who does not object to counsel's comments in closing should not be allowed to complain of those comments on appeal. It is anomalous that the more objectionable the comment, the less the incentive to object.
Appellate courts should not assist in the execution of such tactics.
Equally puzzling is the fact that under current case law from this court, an attorney who fails to make a timely objection to improper argument waives the issue for purposes of appeal if he fails to timely move for mistrial; see e.g., Ed Ricke and Sons, Inc. v. Green, etc., 468 So.2d 908, 910 (Fla.1985); however, he may argue for the first time on appeal that the unobjected to, improper argument justifies reversal. See Blalock, 640 So.2d at 1159.
The Florida Supreme Court has defined what constitutes fundamental error in the context of final argument. In Tyus v. Apalachicola Northern Railroad Company, 130 So.2d 580, 587 (Fla.1961),[2] citing to its earlier opinion in Seaboard Air Line Railroad Co. v. Strickland, 88 So.2d 519 (Fla.1956), the Florida Supreme Court ruled:
[W]e are committed to the rule that in the ordinary case, unless timely objection to counsel's prejudicial remarks is made, the appellate court will not reverse on review. This rule is subject to the exception that if the prejudicial conduct in its collective import is so extensive that its influence pervades the trial, gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury, a new trial should be awarded regardless of the want of objection.
(emphasis in original). It is probably fair to say that careful application of this standard will almost always result in a finding that no fundamental error occurred.
The difficulty in meeting the Tyus standard for reversal was noted in Murphy v. International Robotics Systems, Inc., 710 So.2d 587, 590 (Fla. 4th DCA), rev. granted, 722 So.2d 193 (Fla.1998). The fourth district explained that it had never granted a new trial solely on the ground of unobjected to, improper closing arguments and gave notice that it would not likely do so in the future. Id. at 587. Writing for the court, Judge Klein stated that the court had "all but close[d] the door on allowing this issue to be raised for the first time on appeal." Id. at 590.[3] Adding an historical perspective on *1036 this issue, Judge Klein noted that our supreme court has not granted a new trial solely on the basis of unobjected to, improper argument since 1956 in Seaboard Air Line Railroad Co., 88 So.2d at 519, and that the second district has not done so in forty years. Murphy, 710 So.2d at 589. Interestingly, his research revealed that, other than the first, third, and fifth district courts of appeal in this state, no other court in this country allows improper argument to be raised for the first time on appeal in civil cases. Id. at 591.
Our reluctance to reverse on the ground of unobjected to, improper argument is not to be viewed as condoning the bad practice of law. Instead, our application of the principle of waiver simply requires trial counsel to fulfill the obligation to raise timely objections when rules governing argument are violated. When argument descends to the level of ethical violations, there are other ways to address the transgression than reversal of a jury verdict. See R. Regulating Fla. Bar 4-3.4(c), 4-3.4(e), and 4-3.5(a). In fact, if the argument submitted by adverse counsel violates the Rules Regulating the Florida Bar, an attorney has the obligation to report the violation to The Florida Bar. See R. Regulating Fla. Bar 4-8.3(a). Judges also have the duty to take appropriate action when they observe counsel engage in ethical violations. See Code of Jud. Conduct, Canon 3D(2). In considering this issue, we find it troubling that trial judges are reluctant to curb the abuse perpetrated by trial counsel in the area of improper comments made during closing arguments. As Judge Schwartz noted in Borden, Inc. v. Young, 479 So.2d 850, 851 (Fla. 3d DCA 1985), rev. denied, 488 So.2d 832 (Fla.1986):
[I]t is no longerif it ever wasacceptable for the judiciary to act simply as a fight promoter, who supplies an arena in which parties may fight it out on unseemly terms of their own choosing, and then, on the ground that the loser has asked for what he received, obediently raise the hand of the one who emerges victorious.
Although Judge Schwartz was referring to Florida's appellate judges, trial judges possess the same duty to maintain order and decorum in judicial proceedings. See Fla. Code Jud. Conduct, Canon 3B(3). If the conduct of counsel violates the Rules Regulating the Florida Bar, judges have the obligation under Canon 3D(2) of the Code of Judicial Conduct to address such behavior by taking appropriate action. Although the code does not specify what the term "appropriate action" entails, at least in the case of lawyers who do not heed less severe judicial efforts to correct such conduct, referrals should be made to The Florida Bar.
The dissent argues that Borden stands for the proposition that an appellate court may reverse a jury verdict based on improper argument in order to compel appropriate attorney conduct even if the argument does not constitute fundamental error. We are not convinced that this is the holding of Borden, but if it is, we respectfully disagree. It must be remembered that courts exist to resolve disputes between litigants. Clients should not pay the financial and emotional price of retrial because their lawyers fail to comply with the ethical requirements of the Rules Regulating the Florida Bar. Implicit in the dissent's opinion is cynicism regarding the Bar's ability or willingness to enforce its rules through its disciplinary process. If this dim view of the Bar's ability to enforce compliance with its ethical standards is well-founded, steps should be taken to correct the disciplinary mechanism. In any event, it would be a mistake to punish litigants for the unethical conduct of their lawyers just as it would be a mistake to reward those litigants whose lawyers fail to object understanding that they will get a second "bite of the apple" on appeal if the result at trial is unfavorable to them.
Furthermore, we reject the suggestion of the dissent that appellate courts can efficiently and effectively discipline unethical lawyers through reversal of jury verdicts. Apparently the dissent would either require appellate courts 1) to automatically reverse upon determining that there had been a violation *1037 of the Rules Regulating the Florida Bar by the prevailing party, or 2) to review the violations on a case by case basis to determine whether the violation was sufficiently egregious to require reversal. The first approach would come close to providing a bright line test, but a direct independent undertaking of this policing role would go well beyond the requirements of Canon 3(D)2 of the Code of Judicial Conduct and 5-H Corp. v. Padovano, 708 So.2d 244 (Fla.1997), and create a demand for significant increases in judicial resources. The second approach presents an additional problem in that it eschews the growing trend in American jurisprudence that courts establish predictability. In either case, it follows that this responsibility would exist, not just in the case of improper argument, but whenever the appellate court determines that there has been a violation of the Rules Regulating the Florida Bar. This "independent, free standing rule" would require sua sponte judicial review of the entire trial proceeding to determine the existence of a violation. Without guidance from the supreme court or the legislature, such an approach leaves to each appellate panel the discretion to determine whether an ethical violation by the prevailing party is sufficiently egregious to require reversal.
After scrutinizing the improper argument submitted in the instant case under the Tyus analysis, we hold that the trial court properly denied Dr. Fravel's motion for a new trial because the improper comments made by plaintiffs' counsel during his closing argument do not constitute fundamental error.[4] This ruling will remand lawyers to raise timely objections when confronted with improper argument and create predictability with regard to the future disposition of similar cases by this court.
Lastly, Dr. Fravel challenges the trial court's denial of his motion for remittitur, contending the trial evidence did not support the jury's award of past and future medical expenses. We agree that the $200,000 award of future medical expenses is not supported by the record.
Section 768.74, Florida Statutes (1995), provides, in relevant part:
Remittitur and Additur.-
(1) In any action to which this part applies wherein the trier of fact determines that liability exists on the part of the defendant and a verdict is rendered which awards money damages to the plaintiff, it shall be the responsibility of the court, upon proper motion, to review the amount of such award to determine if such amount is excessive or inadequate in light of the facts and circumstances which were presented to the trier of fact.
(2) If the court finds that the amount awarded is excessive or inadequate, it shall order a remittitur or additur, as the case may be.
* * *
(5) In determining whether an award is excessive or inadequate in light of the facts and circumstances presented to the trier of fact and in determining the amount, if any, that such award exceeds a reasonable range of damages or is inadequate, the court shall consider the following criteria:
* * *
(e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.
Generally, "[i]n determining whether to order a remittitur, the trial judge's discretion is *1038 exercised in the context of determining whether the jury's verdict is against the manifest weight of the evidence or was influenced by consideration of matters outside the record." Waddell v. Shoney's, Inc., 664 So.2d 1134, 1136 (Fla. 5th DCA 1995).
Here, the plaintiffs presented expert testimony regarding Emily's future medical expenses. The only testimony specifically describing the type of treatment and the cost of such treatment came from Dr. Charlotte White, an oral and maxillofacial surgeon. Dr. White stated that in the future it may be necessary for Emily to undergo a surgical procedure called a LeFort osteotomy. She estimated that this procedure would cost between $20,000 to $25,000. Dr. Goldie, an expert in the area of orthodontics, also testified that Emily might require splint therapy for the rest of her life but he did not estimate the cost of such treatment. Similarly, Dr. Yerkes, also an orthodontist, testified that Emily will need physical therapy in the future but he did not describe the type of therapy or its recommended frequency. He added that he had not formed a treatment plan for Emily and was not sure how he would treat Emily. At the conclusion of the evidence, plaintiffs' counsel argued to the jury that it should return an award of future damages for the cost of surgery, "intermittent" physical therapy, orthodontic treatment, and splints. The jury awarded $200,000 in future medical expenses, providing that "those future damages are intended to provide compensation" for five years.
Our review of the evidence reveals that the amount awarded for Emily's future medical expenses does not bear a reasonable relationship to the damages proved at trial. Thus, the award is not supported by the evidence. See § 768.74(5)(e), Fla. Stat. (1995). Accordingly, we reverse the trial court's order denying Dr. Fravel's motion for remittitur and remand this matter for entry of an order for remittitur, or, in the alternative, if the plaintiffs do not agree with the remittitur, to order a new trial in this cause on the issue of damages. See § 768.74(4), Fla. Stat. (1995).
Judgment AFFIRMED; order denying motion for remittitur REVERSED; and cause REMANDED.
GRIFFIN, C.J., GOSHORN, PETERSON and THOMPSON, JJ., concur.
DAUKSCH, J., concurs specially, with opinion in which GOSHORN, J., concurs.
COBB, J., concurs specially, with opinion.
W. SHARP, J., dissents, with opinion.
HARRIS, J., dissents, with opinion in which W. SHARP, J., concurs.
DAUKSCH, J., concurring specially.
While I agree with the result in this case, I write to say I disagree with the noble attempt to establish a "bright-line" test regarding an issue which defies it.
The question for an appellate court to resolve is whether the appellant who failed to object below can raise the issue here. In my opinion he can if he can demonstrate to this court that he was denied the due process and a fair trial which the Constitution requires. It is not a matter of who is at faultthe offending lawyer who misbehaves, or the negligent or crafty lawyer on the other side who does not object, or the trial judge who shirks his duty to intercede. It is a matter of fundamental fairness and this court's duty to see to it that all litigants are given their due in court. That is the primary reason for having courts of appeal.
GOSHORN, J., concurs.
COBB, J., concurring specially.
The two competing viewpoints in respect to the issue posed by this appeal are persuasively articulated in the opinions of Judge Antoon and Judge Harris. The issue is now pending before the Florida Supreme Court, which has granted certiorari review of the Fourth District opinion in Murphy v. International Robotics Systems, Inc., 710 So.2d 587 (Fla. 4th DCA), rev. granted, 722 So.2d 193 (Fla.1998). Oral argument was heard by the court on January 6, 1999, and, hopefully, this conflict which has divided the appellate courts of Florida for some fourteen years will be resolved.
The basic conflict is exemplified by the clash between the opinion of Judge Schwartz *1039 in Borden, Inc. v. Young, 479 So.2d 850 (Fla. 3d DCA 1985), rev. denied, 488 So.2d 832 (Fla.1986), and that of Judge Klein in Murphy, and derives from a difference in focus: the former is primarily concerned with correcting reprehensible attorney misconduct during closing argument; the latter with the proper preservation of trial error and appellate predictability. Formidable arguments are available on both sides of this issue as evidenced by the opinions herein, which should be of benefit to the Florida Supreme Court in its consideration of Murphy.
This court has been committed, at least since 1986,[1] to the Borden approach. It may well be, however, as so ably argued by Judges Klein and Antoon, that the prophylactic purpose of the Borden approach is outweighed by the considerations set forth in Murphy and the majority opinion here. Accordingly, after considerable reflection, I join in the conversions of Judges Griffin,[2] Goshorn,[3] Peterson,[4] and Antoon[5] and concur with the majority opinion, with one exception.
I take exception to footnote 5 of the majority opinion insofar as it implies any agreement with Hagan v. Sun Bank of Mid-Florida, N.A., 666 So.2d 580 (Fla. 2d DCA 1996). The redundant two-step analysis advanced therein seemingly revises the test enunciated by the Florida Supreme Court in two cases, Tyus v. Apalachicola Northern Railroad Company, 130 So.2d 580 (Fla.1961) and Seaboard Air Line Railroad Co. v. Strickland, 88 So.2d 519 (Fla.1956). Moreover, the Hagan result represents a constriction of the authority of a trial judge to deal with the problem of attorney misconduct in closing argument, which conflicts with the major tenet underlying the opinions in Tyus and Strickland i.e., the fact that the judge in the milieu of the trial courtroom is in the best position to gauge the actual effect of prejudicial remarks and deal with them accordingly. See Tyus at 6; Strickland at 524. Fortunately, the body of the majority opinion herein emphasizes the responsibility of trial judges in this regard.
This en banc opinion, at least for the time being, will effectively afford the Fifth District a "bright line test" for purposes of appellate review.
W. SHARP, J., dissenting.
I concur with Judge Harris' dissent in full. However, I write to point out two ironic results of the Fifth District's new position on these matters.
First, we urge trial attorneys to timely make objections and jump through other hoops to preserve the error. Tyus v. Apalachicola Northern Railroad Co., 130 So.2d 580, 587 (Fla.1961) (objection); Baggett v. Davis, 124 Fla. 701, 169 So. 372 (1936) (grounds for objection must be stated); Swan v. Florida Farm Bureau Ins. Co., 404 So.2d 802 (Fla. 5th DCA 1981) (objection must be contemporaneous to give court notice). When the objection is sustained, the party must move for a mistrial. Hagan v. Sun Bank of Mid-Florida, N.A., 666 So.2d 580 (Fla. 2d DCA 1996); Eichelkraut v. Kash N'Karry Food Stores, Inc., 644 So.2d 90 (Fla. 2d DCA 1994); Newton v. South Florida Baptist Hospital, 614 So.2d 1195 (Fla. 2d DCA 1993). Yet attorneys who do so are not much better off.
Reversal by the appellate court for a new trial still depends on the appellate court finding what is essentially "fundamental error". Grushoff v. Denny's, Inc., 693 So.2d 1068 (Fla. 4th DCA 1997); Hagan (legal standard is whether closing argument comment is highly prejudicial and inflammatory); Silva v. Nightingale, 619 So.2d 4 (Fla. 5th DCA 1993) (comments must be so pervasive as to sway jury from dispassionate consideration). *1040 See also § 59.041, Cleveland Clinic Florida v. Wilson, 685 So.2d 15 (Fla. 4th DCA 1996); Weise v. Repa Film International, 683 So.2d 1128 (Fla. 4th DCA 1996) (judgment may not be reversed unless miscarriage of justice occurs). There ought to be a lesser standard for preserved error in such cases, and at this point, there is not.
Second, although we urge trial judges to take a more active role in requiring trial attorneys to adhere to ethical rules of practice and professionalism, we ourselves, as appellate judges, have all but disappeared from this equation, like the Cheshire Cat, fading behind a smile in search of a "bright line," leaving only the trial judges to fight the battle. Because they must stand for election and are more directly subject to pressure from local bar members than are appellate judges, some may be unable or unwilling to do so. I agree with Judge Harris: I seriously doubt our new bright line approach will improve the conduct of trials in this state.
HARRIS, J., dissenting.
There are two independent, albeit related, issues which present themselves when a lawyer makes, without challenge, an improper, excessive, and unethical argument to the jury. These issues are:
1. May a lawyer raise on appeal improper argument of counsel to which there was no objection below?
2. Does the authority of an appellate court to control improper and unethical lawyer behavior which it determines may have affected the jury verdict (closing argument in derogation of the lawyer's obligations under the applicable ethical canons and disciplinary rules) and which is apparent from the face of the record permit the granting of a new trial even when no objection was made below?
The first issue set out above is addressed in Tyus v. Apalachicola Northern Railroad Company, 130 So.2d 580, 587 (Fla.1961). The Tyus court determined:
As is disclosed by our opinion in Seaboard Air Line Railroad Co. v. Strickland, [88 So.2d 519 (Fla.1956)] we are committed to the rule that in the ordinary case, unless timely objection to counsel's prejudicial remarks is made, the appellate court will not reverse on review. This rule is subject to the exception that if the prejudicial conduct in its collective import is so extensive that its influence pervades the trial, gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury, a new trial should be awarded regardless of the want of objection.
The clear holding of this case is that one may not raise on appeal an improper closing argument to which he has not objected unless fundamental error can be shown.[1] Even though Tyus may prevent a litigant who has not objected below to raise the issue of improper closing argument, does Tyus foreclose an appellate court from, on its own, granting a new trial as a sanction against the offending lawyer when it finds that his improper closing argument may have affected the jury verdict and is so offensive and unethical that it demeans the entire judicial process even if no objection was made below?[2] And since the offending statements were made in order to influence the jury, cannot the appellate court presume that an argument that violates the strictures of the canons and the disciplinary rules did in fact influence the jury and is therefore harmful? Tyus didn't consider the *1041 issue of whether a court should be able to sanction unacceptable lawyer behavior in the courtroom which may have improperly influenced the jury. It was content to discuss the issue raised before it, which presented the question only in the context of an appeal claiming fundamental error.
Even though the Strickland rule on fundamental error, reconfirmed by Tyus, seems simple and straightforward, the facts of Tyus, at first blush, do seem to raise the standard so high that nothing can be considered fundamental error. I'm not at all sure that is the case. In considering the Tyus holding, we should focus on the announced rule which is constant and not on the determination by that court as to whether the specific improper argument before it, after jury admonishment not to consider it, met the threshold of fundamental error. A court's determination as to whether a particular argument is sufficiently egregious to influence a jury even after an admonishment not to consider it is subject to change from case to case as the facts change and even subject to change on the same facts from the 1961 court to the present one. It may be that had the facts been even less egregious, but had the trial court not given repeated curative instructions, the Tyus court may have found fundamental error.[3] Such was the case in Strickland.
The second issue set out above is addressed by Borden, Inc. v. Young, 479 So.2d 850 (Fla. 3d DCA 1985), rev. denied, 488 So.2d 832 (Fla.1986). In Borden, Judge Schwartz, after concluding that the conduct of neither counsel was acceptable but that the closing argument of the prevailing lawyer constituted fundamental error even under the Strickland standard, was not content to rely solely on Strickland as the basis for reversal. Judge Schwartz, in a most convincing opinion, observed the following:
Perhaps more important is the broader jurisprudential issue which is raised by cases like this. In our view, it is no longer if it ever wasacceptable for the judiciary to act simply as a fight promoter, who supplies an arena in which parties may fight it out on unseemly terms of their own choosing, and then, on the ground that the loser has asked for what he received, obediently raise the hand of the one who emerges victorious. We demean ourselves and the system of justice we serve when we permit this to occur. In Schreier v. Parker, 415 So.2d 794, 795 (Fla. 3d DCA 1982), we gave notice that "[a]rguments in derogation of Fla. Bar Code of Prof. Resp. EC 7-24, DR 7-106(C)(3), (4) will not be condoned in this court, nor should they be condoned by the trial court, even absent objection ..."
Id. at 851-52.
Hence, the Borden court announced to the lawyers within its district that thereafter arguments in violation of the code of professional ethics would be presumed to constitute fundamental error and that a new trial, even if no objection appears in the record, could be expected as the sanction for such violation.[4] It is thus apparent that Borden is not *1042 a misapplication of Tyus as the majority implies; it establishes an independent, freestanding prophylactic rule of courtroom conduct that the court insists will be followed.[5] In its Borden decision, the Third District committed to enforce the admonishment given to trial judges by the supreme court in Strickland in the event the trial judges did not:
It is the responsibility of the trial court to protect litigants against such interference by counsel with the orderly administration of justice and the protection of the rights of litigants to a verdict "uninfluenced by the appeals of counsel to passion or prejudice."
Id. at 524.
Since the supreme court in Strickland ordered a new trial because of the adverse affect of an unobjected to improper closing argument, did not its admonishment to the trial court authorize it to do likewise?
The Second District seems to have rejected this approach. In Hagan v. Sun Bank of Mid-Florida, N.A., 666 So.2d 580, 584 (Fla. 2d DCA 1996), the court stated:
[T]here is a temptation for both trial courts and appellate courts to use the remedy of new trial as a tool to punish misconduct of an attorney, as an officer of the court, without disclosing whether the misconduct resulted in harmful error ... But if the trial court employs the remedy of new trial merely to enforce the lawyer's professional standards, the parties lose the verdict of their chosen jury.
It is apparent in Borden that in requiring a new trial the court found harmful error. I believe that is also true in those cases relying on Borden whether or not harmful error was discussed in the opinion. And parties often lose the benefit of their verdicts because of lawyer error, often error less serious than a breach of professional ethics. There is no constitutional right, or any right for that matter, to retain a verdict obtained, in whole or in part, through the unethical conduct of one's lawyer. Clients should complain to their lawyers or about their lawyers and not blame the court when a verdict is lost for this reason.[6] In any event, whether we are considering fundamental error or harmful error (assuming Hagan is correct that there is a difference), how can one prove that an outrageous argument did or did not affect a jury verdict as envisioned by Tyus?[7]
The Borden court was not suggesting that the appellate court should replace the grievance process in dealing with unethical lawyers nor even that it be an alternative to such process. It was content to uphold the honor of its court and the integrity of the judicial process by merely denying the unethical lawyer the benefit of his misconduct. Individual discipline was left to the Bar. This seems to be a reasonable approach.
We, in the past, followed the Borden principle. See S.H. Investment & Development Corporation v. Kincaid, 495 So.2d 768, 771 (Fla. 5th DCA 1986), rev. denied, 504 So.2d 767 (Fla.1987), in which Judge Cobb stated: "The Third District in Borden, Inc. v. Young [citation omitted] has stated it will not condone *1043 arguments in derogation of the above cited ethical canons and disciplinary rules, even absent objections. We agree, hence a new trial on all issues is required." See also Stokes v. Wet `N Wild, Inc., 523 So.2d 181 ( Fla. 5th DCA 1988) (Judge Sharp cites Borden with approval). Therefore, we have for years granted new trials both under the rule of Tyus as well as under our Borden supervisory role as a protector of the integrity of the judicial process. The majority herein suggests that our efforts to discourage improper closing arguments by applying Borden have been a failure. I'm not convinced that we haven't made a positive difference. My research discloses only twenty opinions relating to improper closing arguments in civil cases, either with or without objections, since we announced our approval of Borden in 1986. That's approximately one and a half cases a year that we have found merited discussion in an opinion and, since we have considered unethical closing argument a legitimate reason for granting a new trial, it is doubtful that we would affirm without opinion such cases where improper closing argument was shown. That number is manageable.[8]
This figure is in contrast with the Fourth District where "it seems as though, in every week in which we sit, we get at least one appeal in which we are asked to reverse because of improper, but unobjected to, closing argument of counsel." Murphy v. Intern. Robotics Systems, 710 So.2d 587 (Fla. 4th DCA 1998)., rev. granted, 722 So.2d 193 (Fla.1998). Because we should get even a higher percentage of appeals from those claiming improper closing argument (since we have often granted relief) than would be expected in the Fourth District (which has never granted relief), it appears that either the Bar in the Fourth District is unusually optimistic or such improper arguments are much more prevalent there. Hence, the Borden approach, at least in this district, seems to have been more effective than the "hands off" approach taken by the Fourth District in curtailing this most undesirable lawyer conduct.[9] This also indicates that the other avenues available to address lawyer misconduct suggested in Hagan have been ineffective.[10]
I agree that the closing argument in this case, as bad as it was, is not as egregious as the closing argument in Tyus. It may not measure up to the Tyus standard for fundamental error if, in fact, Tyus intended to set such an unreachable standard as assumed by Hagan and Murphy. But because the trial court in our case did not repeatedly admonish the jury to disregard the prejudicial remarks of counsel and did not give a curative instruction (the contents of the Tyus curative instruction that four of the judges believed cured any harm caused by the argument was not set out in the opinion), a new trial may well be justified even under Tyus. Even though Strickland and Tyus are not recent *1044 decisions, there is no statute of limitations on supreme court rulings. By holding that an aggrieved litigant can never (or almost never) show fundamental error (as does Hagan and Murphy), is not the majority "reversing" Tyus and Strickland? In any event, the argument in this case most probably affected the outcome of the trial and certainly violated the precepts of our code of professional responsibility and, under Borden and our cases adopting Borden, reversal would be required. The cause for courtroom ethics and civility is substantially damaged by today's retreat from our prior cases.
W. SHARP, J., concurs.
NOTES
[1] Admittedly we do not have complete statistics on this point. However, the frequency with which this issue is raised cannot be accurately determined by simply calculating the number of times it has been addressed in opinions of this court as suggested by the dissent.
[2] The comments made by trial counsel during argument in Tyus were egregious. See 130 So.2d at 591-93 (O'Connell, J., dissenting).
[3] For a thoughtful and in-depth discussion regarding the issue of whether improper argument of counsel constitutes reversible error, see Larry A. Klein, Allowing Improper Argument of Counsel to be Raised for the First Time on Appeal as Fundamental Error: Are Florida Courts Throwing Out the Baby With the Bath Water?, 26 FLA. ST. U.L.REV. 97(1998).
[4] We note that the second district has crafted a more detailed analysis of the problem. In Hagan v. Sun Bank of Mid-Florida, N.A., 666 So.2d 580, 586 (Fla. 2d DCA 1996), Judge Altenbernd described the following two-step analysis for evaluating the question of whether unobjected to, improper argument constitutes fundamental error:

First, the trial court must determine whether the error was so pervasive, inflammatory, and prejudicial as to preclude the jury's rational consideration of the case.... Second, the trial court must decide whether the error was fundamental. In essence, this is a legal decision that the error was so extreme that it could not be corrected by an instruction if an objection had been lodged, and that it so damaged the fairness of the trial that the public's interest in our system of justice justifies a new trial even when no lawyer took the steps necessary to give a party the right to demand a new trial.
In our view, careful application of the Tyus standard leads to the same result.
[1] See S.H. Investment and Development Corporation v. Kincaid, 495 So.2d 768 (Fla. 5th DCA 1986), rev. denied, 504 So.2d 767 (Fla.1987).
[2] See City Provisioners, Inc. v. Anderson, 578 So.2d 855 (Fla. 5th DCA 1991).
[3] See Walt Disney World Co. v. Blalock, 640 So.2d 1156 (Fla. 5th DCA), rev. dismissed, 649 So.2d 232 (Fla.1994).
[4] See Silva v. Nightingale, 619 So.2d 4 (Fla. 5th DCA 1993).
[5] See Superior Industries International, Inc. v. Faulk, 695 So.2d 376 (Fla. 5th DCA), rev. denied, 700 So.2d 685 (Fla.1997).
[1] Does the test justifying reversal materially change if an objection is made? Even if the trial court improperly overrules an objection, still there will be no reversal unless the error is "harmful." The test for harmful error is whether but for such error a different result would have been reached. Anthony v. Douglas, 201 So.2d 917 (Fla. 4th DCA 1967). If but for the improper closing argument in this case a different result would have been reached, did not its "influence pervade the trial, gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury"? It appears that it is not so much that a different test obtains between fundamental error and harmful error as it is who has the burden of persuasion.
[2] Remember Tyus did not overrule Strickland. In Strickland where there were no objections to closing argument and no admonishments to the jury to disregard improper argument (as there were in Tyus), the supreme court, on facts less egregious than in Tyus, reversed the decision below and required a new trial because of unobjected to improper closing argument.
[3] The Tyus majority had this to say:

The trial judge not only sustained every objection which was made to alleged prejudicial remarks, but also charged the jury to disregard them and to base its verdict exclusively upon the evidence as presented from the witness stand.
* * * * * *
We believe that the charge given in this case by the able circuit judge was sufficient to alleviate any harm to the defendant which might otherwise have existed by virtue of the alleged prejudicial remarks made by counsel for the petitioner only in his closing argument.
Tyus, 130 So.2d at 587, 588.
[4] The court's establishment of this prophylactic rule of conduct is consistent with the authority recognized by the supreme court in State ex rel. Sheiner v. Giblin, 73 So.2d 851 (Fla.1954):

In the absence of some clear constitutional or statutory restriction a court of general jurisdiction has a summary jurisdiction to deal with the alleged misconduct of an attorney, by reason of the necessary and inherent power vested in it to control the conduct of its own affairs and to maintain its essential dignity.
It is further consistent with the supreme court's more recent observation in Powell v. Allstate Insurance Co., 652 So.2d 354, 356 (Fla. 1995), that "the authority of a trial court to grant a new trial derives in part from the equitable principle that neither a wronged litigant nor society itself should be without a means to remedy a palpable miscarriage of justice."
[5] If, as the majority suggests, a lawyer will permit such potentially harmful arguments to be made without objection knowing that such improper argument will affect his chance to win in the first instance in the hope that an appellate court will find the argument sufficiently egregious to give him "a second bite of the apple," such lawyer is truly a compulsive gambler. In any event, his gambling is not nearly as hurtful to the system of justice as the action of the one making the improper closing argument
[6] Courts must be mindful, however, that we are concerned with egregious misconduct and not with spirited advocacy. Forceful argument, even colorful argument, is not necessarily improper argument. It is not improper, for example, to suggest that the defendant is less than truthful or that the claimant is faking or exaggerating an injury if there is record support for such argument.
[7] The court in Tremblay v. Santa Rosa County, 688 So.2d 985 (Fla. 1st DCA 1997), acknowledged this problem by citing its earlier opinion of Bullock v. Branch, 130 So.2d 74 (Fla. 1st DCA 1961):

It is true, as appellee points out in his brief, that there is no evidence in the record demonstrating that the argument in question had a prejudicial or inflammatory effect upon the jury, but it is the very nature of the type of argument in question that it is usually impossible to prove one way or the other what effect an argument of this kind has upon the jury mind.
[8] The majority questions the value of my statistics apparently on the basis that I have not accounted for PCAs. But a PCA would mean either that we found the lawyer's argument below consistent with his professional obligations or that the trial judge, finding that the lawyer abused his professional ethics, granted a new trial. Either occurrence validates our present position.
[9] Even those courts advocating a bright-line rule (no objection, no new trial) seem to recognize that there are some arguments that go beyond the pale and should be an exception to even the bright-line rule. Judge Klein, the author of Murphy, writing in Volume 26, Florida State Law Review, suggests that arguments with racial overtones, even in the absence of demonstrable adverse impact on the jury, might be an exception to the bright-line rule. The courts seem to differ, therefore, not on whether the court should have the authority to correct an injustice caused by an improper closing argument but rather on the nature of the injustice.
[10] The majority herein indicates that the trial court should assert more control over the trial proceedings in order to prevent an improper closing argument from influencing a verdict. But under the majority's theory, how can that be done? Hagan seems to deny the trial court any more authority to grant a new trial based on unobjected to closing argument than it recognizes in the appellate court. It reversed a trial court for granting a new trial upon finding that the lawyer's improper closing argument, not objected to, affected the verdict. Would either Hagan or the majority herein permit the trial court to interpose its own objection to closing argument without an objection from the adverse party? Perhaps. But if the court ought to intervene on its own but does not, doesn't that place more of a responsibility on the appellate court to set aside a verdict brought about by the improper argument of counsel and the abdication of responsibility by the trial court?