773 So.2d 639 (2000)
Pedro Salsedo PEDROZA, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-1500.
District Court of Appeal of Florida, Fifth District.
December 15, 2000.
James B. Gibson, Public Defender, and Nancy Ryan, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Richard L. Polin, Assistant Attorney General, Miami, for Appellee.
SAWAYA, J.
The State of Florida, the appellee, instituted commitment proceedings against Pedro Salsedo Pedroza, the appellant, pursuant to the "Jimmy Ryce Act," hereinafter referred to as the Act.[1] The Act establishes *640 procedures for the involuntary civil commitment of sexually violent predators.
The commitment trial commenced with the State calling Pedroza as a witness. Pedroza had been convicted in 1981 of attempted sexual battery on a child under eleven years of age and aggravated assault. He received prison sentences of thirty and fifteen years respectively for those offenses. The evidence revealed that Pedroza discovered his victim, eight years old at the time, on the street outside an apartment complex. He approached her, grabbed her, and dragged her into a room in the apartment and, holding a knife to her throat, threatened to kill her if she screamed. He raped her and then stabbed her several times with the knife. Pedroza testified that he was under the influence of drugs and became angry when he could not penetrate the victim. He further testified that the little girl began to scream and he lost control of his emotions and started to stab her repeatedly with the knife.
At the conclusion of the commitment trial, the jury returned a verdict finding that Pedroza is a sexually violent predator. The trial judge, pursuant to the verdict, entered a final judgment of commitment, which committed Pedroza to the Department of Children and Families for confinement in a secure facility for control, care, and treatment until such time as Pedroza's mental abnormality or personality disorder has so changed that it is safe for him to be at large.
Pedroza appeals the final judgment of commitment and contends that reversal is warranted for the following reasons: 1) the Act is unconstitutional because it violates the due process, ex post facto, equal protection, and double jeopardy clauses of the federal and Florida constitutions; 2) the trial court erred by denying Pedroza's requested jury instruction defining the statutory terminology "likely to engage in acts of sexual violence"; and 3) the trial court erred by allowing the State's psychologists to testify that they believed Pedroza would reoffend. These are the same issues we that we considered in Westerheide v. State, 767 So.2d 637 (Fla. 5th DCA 2000). As we did in Westerheide, we affirm on all of these issues.
The other issues raised by Pedroza, with one exception, are without merit and do not warrant discussion. The issue that does warrant discussion involves prejudicial comments that the attorney for the State made during closing argument. Perdoza's attorney objected to one prejudicial remark,[2] but did not object to the other.[3] The objection that was made was sustained by the trial court, but Pedroza's attorney failed to move for mistrial. Improper *641 comments during closing argument, like other trial errors, must be properly preserved for appeal by making a contemporaneous objection. See Murphy v. International Robotic Sys., Inc., 766 So.2d 1010 (Fla.2000). If a party makes a contemporaneous objection to an improper comment which is sustained by the trial judge, the party must move for mistrial if he or she wishes to preserve the objection for appellate review. See Ed Ricke & Sons, Inc. v. Green, 468 So.2d 908 (Fla. 1985); Weise v. Repa Film Int'l, Inc., 683 So.2d 1128 (Fla. 4th DCA 1996); Hagan v. Sun Bank of Mid-Florida, N.A., 666 So.2d 580 (Fla. 2d DCA 1996), disapproved of on other grounds, Murphy v. International Robotic Sys., Inc., 766 So.2d 1010 (Fla. 2000); Newton v. South Florida Baptist Hosp., 614 So.2d 1195 (Fla. 2d DCA 1993); Wasden v. Seaboard Coast Line R.R., 474 So.2d 825 (Fla. 2d DCA 1985).
In Murphy, the court realized that the time had come "to restate the approach to be taken regarding the issue of improper, but unobjected-to, closing argument in civil cases." 766 So.2d at 1026-27. The court held that "a civil litigant may not seek relief in an appellate court based on improper, but unobjected-to, closing argument, unless the litigant has at least challenged such argument in the trial court by way of a motion for new trial even if no objection was voiced during trial." Id. at 1027. Pedroza did not file a motion for new trial. Therefore, he is not entitled to reversal. Furthermore, the prejudicial statements do not rise to the level of fundamental error that would require reversal and a new trial based on decisions of this court and other District Courts of Appeal decided prior to Murphy. See Fravel v. Haughey, 727 So.2d 1033 (Fla. 5th DCA 1999); Hagan v. Sun Bank of Mid-Florida, N.A., 666 So.2d 580 (Fla. 2d DCA 1996)[4]; see also Murphy.
We affirm the judgment of commitment. As we did in Westerheide, we certify to the Florida Supreme Court the following questions which we find to be matters of great public importance:
1) DOES THE JIMMY RYCE ACT VIOLATE THE EX POST FACTO CLAUSES OF THE UNITED STATES AND FLORIDA CONSTITUTIONS?
2) DOES THE JIMMY RYCE ACT VIOLATE THE DOUBLE JEOPARDY CLAUSES OF THE UNITED STATES AND FLORIDA CONSTITUTIONS?
3) DOES THE JIMMY RYCE ACT VIOLATE THE DUE PROCESS CLAUSES OF THE UNITED STATES AND FLORIDA CONSTITUTIONS?
4) DOES THE JIMMY RYCE ACT VIOLATE THE EQUAL PROTECTION CLAUSES OF THE UNITED STATES AND FLORIDA CONSTITUTIONS?
AFFIRMED; QUESTIONS CERTIFIED.
ORFINGER, M., Senior Judge, concurs.
W. SHARP, J., concurs with certification only, and dissents, with opinion.
W. SHARP, J., dissenting.
In my concurring opinion in Westerheide, I outlined my concerns regarding the constitutionality of the Jimmy Ryce Act. See Westerheide v. State, 767 So.2d 637, 659 (Fla. 5th DCA 2000) (Sharp, J., concurring). Specifically, I was troubled by the burden of proof and the statutory definitions of persons who can be confined for the remainders of their lives if found to *642 be a "sexually violent predator." I now dissent because the jury instructions on a key element under the Actwhether the person is "likely" to reoffendcoupled with prejudicial comments by the prosecutor denied Pedroza a fundamentally fair trial.
The Involuntary Civil Commitment of Sexually Violent Predators Act, also known as the "Jimmy Ryce" Act, allows the state to confine sexually violent predators for long periods of time. Under the Act, a "sexually violent predator" is any person who has been convicted of a sexually violent offense, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment. § 394.912(10), Fla. Stat.
The definition of "sexually violent predator" is indeed circular, as set forth in the statute. It reminds me of some dictionaries that define a word by reference to another word, which refers one back to the first word. For example, The American Heritage Dictionary defines "abnormal" as "not normal; deviant" and after turning to "deviant" one is referred back to "differing from the norm."
To be classified as a "sexually violent predator" under this statute, a person first must have committed a "sexually violent offense." The statute lists some specific statutes, which clearly include the crime for which Pedroza was convicted. But one troubling aspect allows such a classification for "any criminal act, that has at any time been determined beyond a reasonable doubt to have been sexually motivated." § 394.912(9)(h), Fla. Stat. The possibilities of that latter category are infinite, and open to strange results. Would peeping Toms and Janes, or stalkers qualify?
The second part of the definition is the circular part: He or she "suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence, if not confined in a secure facility for long term control, care and treatment." § 394.912(10)(b), Fla. Stat. Mental abnormality is defined as any mental condition "which predisposes the person to commit sexually violent offenses." § 394.912(5), Fla. Stat. "Likely to engage in acts of sexual violence" is defined "as a propensity to commit acts of sexual violence." § 394.912(4), Fla. Stat. In essence, when rolled together the statute defines sexual predator as a person who has committed a crime, specified by the statute, served the time for that crime in prison, and at the time of his or her release is "likely" to engage in acts of sexual violence in the future, unless confined for an indeterminate time, perhaps many years.
Since the second part of the definition turns on "likely," I agree with Pedroza that this term is key and vital, and that any jury instructions given should address what it means. Here Pedroza requested the following instruction to clarify this element:
1. In order for you to find that [Pedroza] is "likely to engage in acts of sexual violence" if he is not confined in a secure facility, you must find that the State has shown, by clear and convincing evidence, that [Pedroza] more likely than not will engage in such acts if not confined.
2. (In the alternative) "Likely" means "more likely to happen than not."
3. (In the alternative) "Likely" means "having a better chance of existing or occurring than not." (citations omitted)
The trial judge declined to give this instruction on the basis that it did not help and would make the issues more complicated and harder to understand. Instead, the judge instructed the jury in language which tracked the statutory language:
Likely to engage in acts of sexual violence means a person's propensity to commit acts of sexual violence of such a degree as to be a menace to the health and safety of others.
*643 In Westerheide, the majority found that the term "likely" is a widely-used term which is understood by people of common intelligence to mean highly probable, or probable, and having a better chance of existing or occurring than not. Westerheide, 767 So.2d at 651. The majority goes on to say that the meaning of "likely" is sufficiently clear and definite to avoid guessing or speculation concerning its intended meaning under the Act. I am not sure that this is true. Some people use the term to mean there is a chance something will occur, although less than 50%. In fact, the prosecutor in this case argued to the jury that a very low percentage was sufficient to find Pedroza likely to reoffend:
[E]ven taking Dr. Krop's tests of the RRASOR, about 11 percent failure rate after ten years. The SORAG was, I thinkdid we say 17 percent after seven years. Another one, the Minnesota test about 12 percent he's likely to reoffend. The base rate for all offenders was 22 percent.
All that sounds like likely to reoffend to me. It doesn't say highly likely, like 98 percent. This is likely to reoffend, you know. The onlyit's only about 12 percent chance here that you have cancer or are going to die. Whoa, whoa, whoa. That's pretty scary when we're talking about human lives and behavior. That's likely.[1]
Since this statute has very grave consequences for persons found to be sexually violent predators and since we (as courts) at least until this time in our democracy, have always sided with freedom for the individual, I would read the language of the statute as placing the highest barrier to being found to be a sexual predator.[2] The ending part of the statutory definition of "likely to engage" says this likeliness must be "of such a degree as to pose a menace."[3] Thus I would construe "likely" as meaning a high probability, greater than 50%. Any other definition of "likely" opens up a range of possibilities which may not pass constitutional muster.[4]
The majority in this case concludes that the error regarding the prosecutor's improper comment was not preserved for appeal. The purpose of the rule requiring preservation of error is to apprise the trial judge of an issue and thus provide the judge with an opportunity to correct any error below. See, e.g. Cooper v. State, 742 So.2d 855 (Fla. 1st DCA 1999). Here Pedroza specifically requested an instruction on the element of "likely" and thus the court was clearly on notice of this issue.[5] Pedroza also objected to another improper comment by the prosecutor.
The cases relied on by the majority are civil casesfor example, Murphy involved a breach of contract and Fravel involved medical malpracticeand they did not involve *644 the liberty interests at stake here.[6] I would hold that the instructional error, compounded by the prosecutor's misstatements of law to the jury, constitutes fundamental error and entitles Pedroza to a new trial. See Quaggin v. State, 752 So.2d 19 (Fla. 5th DCA 2000) (error in instructions on the justifiable use of force, which was preserved for review, coupled with prosecutor's misstatements regarding defendant's burden of proof, although not preserved, went to the very heart of the case so as to constitute fundamental error).
NOTES
[1] The Act was originally found in sections 916.31-.49, Florida Statutes (Supp.1998) which became effective on January 1, 1999. See Ch. 98-64, § 24, at 276, Laws of Fla. Shortly thereafter, the Legislature amended and renumbered the Act as sections 394.910.930. The Act is currently located in Part V, Chapter 394 of the Florida Statutes entitled "Involuntary Civil Commitment of Sexually Violent Predators." See Ch. 99-222, § 1, at 961, Laws of Fla. These changes became effective on May 26, 1999. See Ch. 99-222, § 29, at 972, Laws of Fla. Although the Legislature amended the Act, the amendments did not change the particular statutory provisions which apply to the instant case. Therefore, we will cite to the most recent statute found in chapter 394 in this opinion even though the proceedings in the instant case were actually brought against Pedroza pursuant to chapter 916.
[2] The attorney for the State stated:

What's really at issue here, though, what you're being asked to decide, is he likely to reoffend. If you decide that he's not, he walks out of this courtroom, and we all have to be comfortable that someone else is not at risk out there as a result of what we've done here today.
[3] The attorney for the State stated:

Even taking Dr. Krop's tests, the RRASOR, about 11% failure rate after ten years. The SORAG was, I think-did he say 17% after seven years. Another one, the Minnesota test, about 12% he's likely to reoffend. The base rate for all offenders was 22%. All that sounds like `likely to reoffend,' you know. The only-it's only about 12% chance here that you have cancer or are going to die. Whoa, whoa, whoa! That's pretty scary when we're talking about human lives and behavior. That's `likely.'
[4] The court in Murphy disapproved of Hagan to the extent that it stands "for the proposition that a trial court's grant of a new trial based on unobjected-to closing argument should be subject to a de novo standard of review on appeal. The nature of the elements to be examined and the impact upon a trial are issues that are more properly resolved at the trial level, subject to extremely limited review on appeal." Murphy, 766 So.2d at 1030-31 n. 24.
[1] The RRASOR and the SORAG are actuarial tests utilized by the sexually violent predator program.
[2] See, e.g., Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (requiring elevated standard of proof in parental rights termination proceedings to alleviate possible risk that a factfinder might decide to deprive an individual of a fundamental interest based solely on a few instances of unusual conduct or idiosyncratic behavior); Dept. of Banking and Finance, Div. of Securities and Investor Protection v. Osborne Stern and Co., 670 So.2d 932 (Fla.1996) (where proceedings implicate the loss of one's livelihood, an elevated standard of proof is necessary to protect the rights and interests of the accused).
[3] § 394.912(4), Fla. Stat.
[4] See, e.g., Cuda v. State, 639 So.2d 22 (Fla. 1994) (terms "improper" and "illegal" as used in statute making it a crime to financially exploit aged persons or disabled adults were unconstitutionally vague); Brake v. State, 746 So.2d 527 (Fla. 2d DCA 1999) (crime of luring a child into a dwelling or conveyance for "other than a lawful purpose" was unconstitutional; term "other than a lawful purpose" failed to give adequate nature of proscribed conduct).
[5] Florida Rule of Civil Procedure 1.470(b) provides that no party may assign as error the failure to give any charge unless the party requested the charge.
[6] See Murphy v. International Robotic Systems, Inc., 766 So.2d 1010 (Fla.2000) (civil action for misrepresentation, breach of contract and breach of fiduciary duty in connection with the production and marketing of remote controlled marine vehicle, the assignment of two patents and the sale of assets of the corporation); Fravel v. Haughey, 727 So.2d 1033 (Fla. 5th DCA 1999) (parents of patient sued orthodontist for negligent failure to diagnosis and treat degenerative jaw condition).