DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DONOVAN M. HENRY,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-303

[September 12, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Krista Marx, Judge; L.T. Case No. 502015CF012851A.

James S. Lewis, Fort Lauderdale, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melynda L. Melear, Senior Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

The sale of a small amount of marijuana from one college student to another took a deadly turn when Appellant Donovan Henry arrived at the apartment of Nicholas Acosta, accompanied by several other individuals, one of whom was carrying a firearm. Although the testimony differs as to whether Appellant's original intention was a drug deal or a drug steal, the interaction ultimately ended in the fatal shooting of Mr. Acosta ("the victim"). Appellant was convicted of second degree murder with a firearm, burglary with a firearm, and robbery with a firearm.

Appellant appeals the conviction (for which he was given a prison sentence of thirty-five years), raising three specific challenges as well as a claim of cumulative error. We affirm on all issues, writing solely to address Appellant's contention that statements made by the prosecution at trial constituted reversible error.

**Background**

Both Appellant and the State agree that Appellant knew the victim and had arranged to purchase "some weed" from him. Appellant and four other

young men (three of whom were co-defendants) went to the victim's university apartment. Appellant testified that his intention was merely to purchase marijuana. He said he did not learn that the three co-defendants intended to rob the victim until they had arrived at the apartment, and one of the co-defendant's pointed a gun at Appellant, and demanded that Appellant go along with the robbery. Appellant further testified that a few seconds after he and the fourth man were invited into the victim's apartment by the victim's girlfriend, the three co-defendants, who wore masks, rushed through the door and the co-defendant with the gun ordered everyone to get on the floor. Appellant testified that he complied and got on the floor. The victim did not get on the floor and was shot twice and killed by the armed co-defendant. The five men then left the apartment, taking the marijuana with them.

The defense strategy at trial was to impress upon the jury that it was nonsensical for Appellant, a college student, to plan to rob an acquaintance and fellow student who would be able to identify him. The defense argued that Appellant's limited participation in the crimes charged was under duress.

Testimony from the State's witnesses contradicted Appellant's account. A co-defendant[1] testified that Appellant had initiated the plan to rob the victim, and knew about the gun beforehand. This co-defendant testified that he overheard Appellant telling one of the other men involved that he did not need to shoot the victim, but could use the gun to beat him. The victim's girlfriend, who witnessed the shooting, testified that Appellant did not get on the ground, but instead joined the shooter and others in yelling at the victim to get on the ground. The State also presented the testimony of a classmate of Appellant's who stated that Appellant had asked him and others on two different occasions if they knew of any marijuana dealers because he (Appellant) and a friend "wanted to buy some weed or buy larger amounts of weed to rip them off."

In closing, the State painted Appellant as the mastermind of the robbery. The tone of the State's closing argument was set at the start:

> Members of the jury, as Cesar [sic] laid dying, killed by people that he trusted, people that he thought were his friends, [he] cried out Et tu, Brute? Betrayal and greed, that's what killed Cesar [sic]. And it's the same betrayal and greed that you, Donovan Henry, the Defendant in this case, had and why

---

[1] This co-defendant testified in exchange for being permitted to plea to second-degree murder, rather than first-degree murder.

2

Nicholas Acosta is dead. Nothing more.

. . . .

When you set it up and you get the gang together, and you go there to do it and you pull it off, and you end up shooting and killing a person, you are responsible.

On appeal, Appellant references the above comment, and several others made by the prosecution during cross-examination and closing, which Appellant argues were "disparaging and prejudicial" and that, collectively, were so extensive that their influence "pervaded the trial," "undermined the impartiality of the proceedings[,] and deprived [Appellant] of his inalienable right to a fair trial."

## Analysis

In *Spencer v. State*, the Florida Supreme Court set forth the standard of review for improper comments made during closing without a contemporaneous objection:

> As a general rule, this Court has determined that failing to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review. The sole exception to this general rule is where the unobjected-to comments rise to the level of fundamental error. In order for an error to be fundamental and justify reversal in the absence of a timely objection, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error."

*Spencer v. State*, 842 So. 2d 52, 74 (Fla. 2003) (internal and external citations omitted).

Comments during cross-examination that were properly objected to and overruled are reviewed for an abuse of discretion, *see Brinson v. State*, 153 So. 3d 972, 975 (Fla. 5th DCA 2015), and a trial court's ruling will be upheld unless it is arbitrary, fanciful, or unreasonable. *Banks v. State*, 46 So. 3d 989, 997 (Fla. 2010). Objections to cross-examination comments that are sustained, but for which the defense fails to timely move for a mistrial, are reviewed for fundamental error. *Companioni v. City of Tampa*, 51 So. 3d 452, 456 (Fla. 2010); *see also Pedroza v. State*, 773 So. 2d 639, 641 (Fla. 5th DCA 2000).

3

Acknowledging that most of his challenges were not properly preserved, Appellant argues that the cumulative effect of the prosecutor's improper comments made during cross-examination and during closing argument was fundamental error and, therefore, requires a new trial. Specifically, Appellant contends that the prosecution created "an image of [Appellant] as an evil and violent human being, who harbors an indifference to human life," thus fundamentally depriving Appellant of a fair trial.

A review of the record corroborates Appellant's admission that only a few of the comments that are challenged on appeal were actually objected to at trial, and "other objections were general." Moreover, the trial court sustained several of Appellant's objections during the State's cross-examination of Appellant, and defense counsel never followed up with a request for curative instruction or a motion for mistrial. Other objections were properly overruled, due to the general nature of the objection, such as "improper comment." *See Castor v. State*, 365 So. 2d 701, 703 (Fla. 1978) ("[A]n objection must be sufficiently specific both to apprise the trial judge of the putative error and to preserve the issue for intelligent review on appeal.").

The most objectionable comment during cross-examination was the prosecutor's question to Appellant, "[d]o you just have a complete indifference to human life?" In its answer brief, the State acknowledges that "the question may have been a step too far." We agree, but also agree that the statement, alone, or when considered with any of the other challenged comments, did not rise to the level of fundamental error, particularly when viewed in context. *See Mendoza v. State*, 964 So. 2d 121, 133 (Fla. 2007) ("To constitute fundamental error, improper comments by the prosecutor must be so prejudicial that they would taint the jury's verdict."). Here, the objectionable comment followed Appellant's admission that he failed to assist the victim after the latter was shot, choosing instead to flee with the co-defendants, including the shooter. Moreover, and importantly, Appellant's objection to this comment was sustained by the trial court.

Appellant objected to only two comments made by the prosecution during closing arguments (both objections were overruled). Appellant argues that the "disparaging remarks about [Appellant] during [the State's] closing argument, such as calling him a murderer and a liar, and characterizing him as violent, undermined the impartiality of the proceedings and deprived [Appellant] of his inalienable right to a fair trial" and "were so prejudicial as to constitute fundamental error." We disagree. "Here, on the whole, the comments made during closing were fair

4

comments on the evidence and direct responses to defense arguments, and did not amount to 'fundamental error' which tainted the validity of the trial." *Wilchcombe v. State*, 842 So. 2d 198, 200 (Fla. 3d DCA 2003).

As acknowledged by Appellant, he has the burden on appeal to establish fundamental error, as few of the arguably unacceptable comments were objected to at trial, and the objection to the "complete indifference to human life" statement was sustained by the judge, with no follow-up by Appellant.

We conclude that Appellant has failed to establish fundamental error with respect to statements made by the prosecution during cross-examination and closing. The State characterized Appellant as a "violent criminal," "a murder, an armed robber, and an armed burglar," and someone that the jury "should not like." These characterizations, in the abstract, could be viewed as "step too far" statements. However, when measured as to whether they were proper in the context of the State's effort to establish that Appellant was a willing participant in the burglary and robbery, by gunpoint, of the victim, and in light of the State's evidence supporting its charges, these characterizations of Appellant and his actions did not cross the line, either separately or cumulatively, into the realm of fundamental error.

## Conclusion

In December 2015, Appellant and Nicholas Acosta were young men attending college in South Florida, with promising lives ahead of them. One year later, Acosta had been dead for a year and Appellant had just been convicted of murder, burglary and robbery, sentenced to spend the next three decades in prison. This is not necessarily a Shakespearian tragedy, as the State suggested in closing, but it certainly can be characterized as An American Tragedy.

The prosecution questioned and commented regarding Appellant in a brusque fashion, but with few objections that would have provided an opportunity for the trial court to request that the State "tone it down." Absent objections or a request for mistrial for those objections that were sustained, Appellant must demonstrate fundamental error. He has not, as none of the comments—whether considered individually or collectively—were of the type which "reach[ed] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *See Kennedy v. State*, 59 So. 3d 376, 382 (Fla. 4th DCA 2011) (quoting *Brooks v. State*, 762 So. 2d 879, 899 (Fla. 2000)). Here, the State presented the testimony of several

5

witnesses that conflicted with Appellant's defense and provided a sufficient evidentiary basis for the guilty verdicts. Thus, upon review of the record and Appellant's arguments of fundamental error, we determine that the trial court's final judgment should be affirmed.

*Affirmed.*

WARNER and MAY, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***